McGreary v. Osborne.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Brought forward, - | - | - | - | - | - | - | - $875 | 13 |
| Amount tendered, - | - | - | - | - | - ⸪ | - | - 743 | 00 |
| Balance, - - | - | - | - | - | - | - | - $132 | 13 |

The judgment is reversed, and cause remanded.

---

McGREARY v. OSBORNE et al.

A tenant who puts up machinery for a mill, in a house leased, and fastens it by bolts, screws, etc., to the house, has the right to remove it; but as between vendor and vendee, such machinery would be considered as a part of the realty.

The evident intention of the act, in relation to mechanic's liens, was to give mechanics and artisans a lien for all work done by them, upon any description of property. The first section gives a lien upon the superstructure itself, as distinct from the land; and the fourth section gives a lien also upon the land, when the same is owned by a person who caused the superstructure to be erected.

The object of the act was to give the mechanic a lien upon whatever interest the person who caused the superstructure had, and which could be sold under execution.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action to enforce a mechanic's lien. The facts appear in the opinion of the Court.

*McDougall & Sharp* for Appellants.

The property upon which a lien is claimed by plaintiff in this action, is personal property, and cannot be the subject for a lien for repairs, except whilst in the possession of the mechanic or artisan who made the repairs; as provided in section ten of the mechanics' lien law.

In this case there is no pretence that the machinery has been in possession of plaintiff since the completion of the work.

The lien claimed is simply on the mill and machinery, and not on the building and ground, although the machinery is fastened to the building by nails, bolts, screws, etc.

The law of fixtures has been materially modified in favor of trade and manufactures, etc. It is not claimed and should not be maintained by Dore & Ross, that the mill or machinery is a fixture, as between Dore & Ross, the landlords, and defendants Rankin & Beach, the tenants, or that the tenants could not remove the mill at the expiration of any month, or at the termination of the lease. In Lawton v. Lawton, 3 Atkyns, 13, Lord Hardwicke discusses the law of fixtures, and determines that fire-engines, vats, brewing-vessels, and other machinery,

though annexed to the freehold, yet as they are laid for the convenience and promotion of trade and manufactures, the landlord cannot retain them, and the tenant can remove them at the expiration of the lease.  See, also, 1 Atkyns, 477; 17 Johnson, 121; 14 Mass., 356; Toll Law of Executors, 96; 6 Johnson, 5; 20 Johnson, 29.

If the mill and machinery be considered real property, or a fixture, then the plaintiff can have no lien, because, to be a fixture, it must be a part of the realty, or the building in which it is situated; how then can the plaintiff have a lien upon the mill, a part of the land and building, and not upon the land and building itself.  Suppose he had a lien, and should get a judgment of foreclosure, and sell the mill and machinery, what rights would the purchaser acquire?  Could he use possession, and enjoy or remove the mill, a part of the realty, without being a trespasser upon the owner of the fee?  Again, Dore & Ross are the owners of the realty, and not parties; can the plaintiff foreclose and sell a part of the realty without making the owners parties?  We think not.  The plaintiff's lien, at the most, could only bind the interest of Osborne.  Statutes of 1856, page 204, § 4; Bottomly *v.* Grace Church, 2 Cal., 90; English et al. *v.* Foote et al., 8 Sm. & Mar., 444; Gray *v.* Caviere, 5 Cal., 511.

Mechanics' lien law is in derogation of the common law, and must be strictly construed.    Bottomly *v.* Grace Church, 2 Cal., 90.

*A. H. Hitchcock* for Respondent.

The law respecting liens upon personal property, does not apply to fixtures and superstructures erected for the purpose of trade and manufactures, and which are *quasi* movable, and may be removed by the tenant.

The lien law has been amended from time to time, and the object of the law, as it appears by the amendments, is to give mechanics and material men security for labor done and materials furnished, in every conceivable case.    The first law was enacted in 1850, (Compiled Laws, 808,) and gave a lien on buildings and wharfs.    In 1853, a supplementary act was passed (Compiled Laws, 811,) by which a lien was given in certain other cases therein specified.    The law, up to this time, however, was very limited in its operation.    It was again amended, (Session Laws, 1856, p. 203,) and among other things, the very comprehensive word superstructure inserted; so that in addition to the "building and wharfs," a lien was also given upon superstructures.    § 1, ib.

Section one gives to all artisans, etc., a lien for repairs, etc., on any building, wharf, or structure, without any qualification. Section four, ib., further, and in addition to a lien on the building or superstructure, gives a lien on the land on which the

building or superstructure is erected, if at the time the work, etc., was done, they, the land and superstructure, belonged to the same person.   The same section, in addition to the lien on the building or superstructure, gives a lien, also, on the interest which the person had in the land, if less than a fee-simple, who caused the building or superstructure to be erected.

A superstructure, therefore, by this statute, may be a part of the freehold, and subject to the laws that govern freeholds, as when it is affixed thereto, and is the property of the owner of the land.   2 Kent Com., 343.

It may be a tenant's fixture, erected for the purposes of trade or manufacture; in which case it is personal property, and *quasi* movable.   2 Kent Com., 343, 339.

This is the case now before the Court.   The only interest that Osborne had in the land on which the mill was erected is a tenancy; the mill, consequently, is a superstructure, erected for the purpose of manufacture; and in addition to the lien which we have in the mill, by section four, we have also a lien on the lease by section four.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

Dore & Ross leased to Rankin & Co. a frame building, resting on piles driven into the earth.   The basement floor was on the ground; and in this building Rankin & Co. put up machinery for a steam flouring-mill.   The frame in which the machinery was placed was supported by props from the basement story, and was also fastened to the building by screws, bolts, and nails. During the continuance of the lease, Rankin & Co. sold the property to Osborne for $7,000, he paying down $3,000, and executing his promissory notes for the balance.   In the written contract of sale executed by all the parties, it was stipulated that Osborne was to have immediate possession; and, upon payment of the note, Rankin & Co. were to execute a bill of sale.   In case Osborne failed to pay any of the notes, Rankin & Co. were authorized to take possession of the property and sell it, paying any surplus that might remain after discharging the notes to Osborne.   While Osborne was in possession, and before any one of the notes became due, he employed the plaintiff to repair the machinery.   After the repairs were made, Osborne sold to Veatch, and he to Rankin & Co., who executed a new contract of sale to Veatch.   This suit was brought to recover the amount due for work and labor, and to enforce a mechanic's lien upon the machinery.   The plaintiff had judgment in the Court below, and the defendants appealed.

The rule in reference to fixtures is applied with different degrees of strictness as between different parties. (2 Kent, 345.) As between the landlords and tenants in this case, there would

seem to be no doubt as to the right of the latter to remove the machinery. But, as between vendor and vendee, the machinery would be considered as part of the realty. (2 Kent, 346, and authorities there cited.)

The first section of the act of April 19th, 1856, gives mechanics and others, for work and labor, or materials furnished, for the construction or repairing of any building, wharf, or other superstructure, a lien upon such building, wharf, or superstructure, for the work and labor done, or materials furnished. The fourth section goes further, and also gives a lien upon the land, if at the time the land belonged to the person who caused the superstructure to be erected. The tenth section gives mechanics and artisans a lien upon personal property made, altered, or repaired by them, with the right to retain the possession until payment.

Putting these different provisions together, the evident intention of the act was to give mechanics and artisans a lien for all work done by them upon any description of property. The first section is very broad, and gives a lien upon the superstructure itself, as distinct from the land; and the fourth section gives a lien also upon the land, when the same is owned by the person who caused the superstructure to be erected. The object of the act was to give the mechanic a lien upon whatever interest the person had who caused the superstructure to be made. If the party owned only the superstructure, then the lien would only attach to that; but if he also owned the land, the lien would also embrace it. And any interest in land which could be sold under execution would be the subject of such a lien.

Unless we give the act this construction, we must do manifest injustice to the language of the first, fourth, and tenth sections. It may often happen that the ownership of the superstructure may be in one person, and that of the land in another. (5 Mass. R., 487; 8 Mass. R., 282; 3 Kent, 487, note.) From the *quasi* movable character of the property involved in this case, the plaintiff could not take and keep possession of it, as of that kind of personal property mentioned in the tenth section. This state of the case was foreseen by the framers of the act; and, therefore, the lien was given upon the superstructure itself, as distinct from the land.

It is very justly contended by the counsel of defendants, that Osborne could do no act to affect the rights of Dore & Ross, or those of Rankin & Co. The latter had agreed to sell their interest to Osborne, and had placed him in possession; and, under the stipulations contained in the written contract executed by Rankin & Co. and Osborne, the remedy left Rankin & Co., upon non-payment of the balance of the purchase-money, was a sale of the property. Osborne had the right to insist upon a sale, and the payment of the surplus proceeds, if any, to him. This right existed in Osborne at the time the work was done, and the

lien attached upon his interest.   Those who purchased afterwards took subject to the lien.

Judgment affirmed.