[Civ. No. 2944.    Third Appellate District.—November 24, 1926.]

## WESTERN ELECTRIC COMPANY, INC., Appellant, v. IDA E. COLLEY et al., Respondents.

[1] MECHANICS' LIENS—CONSTITUTIONAL LAW—PROPERTY SUBJECT TO LIEN—POWER LINES.—The language of section 15 of article XX of the state constitution, relating to liens of "mechanics, materialmen, artisans and laborers," is direct and positive that materialmen shall have a lien upon the property for which they have furnished material, and such provision is sufficiently broad and comprehensive in its terms and intendments to extend the protection of a lien to every kind and character of thing or object called "property" upon which labor is performed or in the construction of which materials furnished are used; and electric light poles, wires, and whatever material enters into and is used in the construction of a power line constitutes property.

[2] ID. — STATUTORY CONSTRUCTION — OTHER STRUCTURE — PERMANENT OBJECTS.—The legislature, in the use in section 1183 of the Code of Civil Procedure of the term "other structure," after the words "building, wharf, bridge, ditch," etc., must have had in mind

---

2.    See 17 Cal. Jur. 34.

the comprehensive language of the constitution where use is made of the word "property," and intended to include all objects built upon the soil, and in some instances extending beneath the surface of the soil, which partake of the nature of permanency and are put in place to accomplish some definite purpose.

[3] ID. — POWER LINE — APPURTENANCE — STRUCTURE. — A power line constitutes property appurtenant to the land and is within the definition of a structure erected thereon.

[4] ID.—POWER LINE ALONG PUBLIC HIGHWAY—OWNERSHIP OF FEE— RIGHT OF LIEN.—A power transmission line built upon or along a public highway is subject to a lien in favor of a materialman, irrespective of the ownership of the fee to the soil in which the poles are erected.

(1) 40 C. J., p. 64, n. 54, p. 66, n. 13.    (2) 40 C. J., p. 65, n. 80. (3) 18 C. J., p. 294, n. 1; 40 C. J., p. 65, n. 80, 91 New.    (4) 40 C. J., p. 65, n. 91 New, p. 397, n. 65.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Willard P. Smith and Kenneth B. Dawson for Appellant.

J. E. Ebert and A. C. McLaughlin for Respondents.

PLUMMER, J.—Action to foreclose lien upon an electric power transmission line on account of materials furnished for and used in the construction thereof. Defendants had judgment and the plaintiff appeals.

The pleadings set forth the necessary allegations concerning the corporate existence of the plaintiff, the business in which it was engaged and the furnishing of materials used in the construction of an electric power line, the nonpayment therefor, the filing and recording of the lien and the time showing that this action was begun within the period limited by the statutes. ·

The facts as found by the court necessary to be set forth herein are substantially as follows:

That Clayton Avenue is a public road and highway extending north and south through a certain tract called the

4. See 17 Cal. Jur. 28.

"Los Plumas Tract" in section 24, township 13 north, range 3 east, M. D. B. and M., Sutter County; that defendants herein own small tracts of land adjoining said Clayton Avenue; that Clayton Avenue is intersected by a certain other public road called "Central Avenue," along which the Pacific Gas and Electric Company maintains an electric power line; that the defendants desiring power for irrigation and other purposes, entered into a contract with Lester W. Lack and Eldon J. Robinson, doing business under the firm name and style of Lack and Robinson, to erect a power transmission line along Clayton Avenue in front of the properties belonging to said defendant, this power line to be connected by private lines to pumping plants situated on tracts of land owned by the different defendants; the line along Clayton Avenue was about a half mile in length and was intended to be connected with the power line maintained by the Pacific Gas and Electric Company. The record shows the power line was erected by the said Lack and Robinson; that supplies, including poles, insulators, wires, and the various kinds of material necessary to be used in the construction of a power line were furnished by the plaintiff to the said Lack and Robinson and used in the construction of the said half mile of power line on said Clayton Avenue; that the amount due upon the contract for materials furnished by the plaintiff and so used in the construction of said power line was the sum of $435.99. After finding these facts and others not necessary to be set forth herein, the court made the following findings, numbers 26 and 27, to wit:

26. "That said power transmission line so built by said Lack & Robinson on Clayton Avenue as aforesaid was built as specified in Contracts 2 and 3 as set forth in finding 10 hereof and is not a 'structure' as defined in Section 1183 of the Code of Civil Procedure of the State of California."

27. "That the said power transmission line is built on a public highway which is owned and controlled by the State of California, and during all the times mentioned in the complaint and is now used for highway purposes and is not subject to any lien of this plaintiff for any purpose whatever."

Under findings Nos. 26 and 27 there are but two questions necessary to be considered in the determination of

this appeal. No other questions involving the merits of the action need be considered, as no error or irregularity in any other particular is urged upon our attention going to the merits of the action.

Did the court err in holding that an electric power line, consisting of poles, wires, and other materials necessarily entering into the construction of the same is not a structure within the meaning of the language used by the legislature in section 1183 of the Code of Civil Procedure? [1] In answering this question it may be profitable to first consider the language of section 15 of article XX of the state constitution, which reads: "Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished material, for the value of such labor done and material furnished; and the legislature shall provide, by law, for the speedy and efficient enforcement of such liens." The language of this section is direct and positive that materialmen shall have a lien upon the property for which they have furnished material. We think it unnecessary to cite authority to support the statement that electric light poles, wires, and whatever material enters into and is used in the construction of a power line constitutes property. Again, the section of the constitution is broad and comprehensive in its terms and intendments, having for its purpose the giving to both laborers and materialmen more security for the labor performed and the materials furnished, without specifying the kind, character of the thing or object called property upon which the labor is performed or in the construction of which the materials furnished are used. So long as it comes within the definition of property, the constitutional provision is sufficiently liberal to extend the protection of a lien. In pursuance of this constitutional provision the legislature in providing the machinery for the enforcement of such liens has used both particular and general terms of definition. So far as material here, section 1183 of the Code of Civil Procedure reads: "Materialmen . . . furnishing materials to be used or consumed in or furnishing appliances, teams and power contributing to the construction, alteration, addition to or repair, either in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, wagon

road *or other structure* shall have a lien upon the property upon which they have bestowed labor or furnished materials,'' etc.

[2] We think the legislature in the use of the term ''other structure'' must have had in mind the comprehensive language of the constitution where use is made of the word ''property'' and that a liberal and fair interpretation would lead to the conclusion that the legislature so intended, and not that the term ''other structure'' is limited in its meaning to an object, which is in kind similar either to a house, a wharf, a bridge, or a wagon road, but includes all objects built upon the soil, and in some instances extending beneath the surface of the soil which partake of the nature of permanency, that is, a structure is an object which is built upon the soil and is not necessarily a house, or similar to a house, a bridge, or similar to a bridge, but is property under the constitutional definition having the nature of permanency and put in place to accomplish some definite purpose.

In 40 Cal. Jur., page 65, section 32, we find the following: ''The meaning of the word 'structure,' as used in a statute authorizing a lien for labor performed or materials furnished in connection with the creation, improvement, or repair of a structure, is to be ascertained by referring to the meaning of the words associated with it, and where all the associated terms designate classes of property attached or appurtenant to, or a part of, the land, the word 'structure' is to be likewise restricted, notwithstanding the fact that it is susceptible of other definitions.''

[3] There can be little doubt that a power line constitutes property appurtenant to the land, that it is a creation or an improvement entering into the value of the land just as permanently and with the same valuable characteristics as other objects mentioned. All of the terms used in the statute which we have quoted relate to material improvements attached to or having to do with soil, which would lead to the conclusion that a power line, which necessarily in the erection of its poles must be attached to the soil, is within the definition of a structure erected thereon just as much as a house or a barn. The use is different, to be sure, but the ultimate purposes are the same—the

enhancement of the value of the land and the enabling of the owner thereof to subsist thereon in comfort.

In *Barnes* v. *Montana Lumber & Hardware Co.*, 67 Mont. 481 [216 Pac. 335], the supreme court of Montana, in seeking to define the word "structure," uses the following language: "When we have a case such as the one at bar, where all other associated terms share the common element of being attached to, appurtenant to, or of the land we believe the rule is particularly applicable. We are therefore of the opinion that, as used in section 8339, *supra*, the word 'structure' must be held to partake of the element which is common to the associated term, notwithstanding other possible definitions thereof. This is especially true since the word 'structure' is ordinarily understood as meaning a building. . . . We do not wish to be understood as saying that the words 'structure' and 'building,' as used in the statute, mean the same thing. We are, however, of the opinion that a 'structure,' to be lienable, must, at the same time the labor is performed upon it or the materials are used in connection with its creation, improvement, or repair, be attached to the land. In other words, without partaking of that nature of fixtures which in certain instances makes them nonremovable portions of the real estate, the 'structure' must be affixed to the land or be of or appurtenant to it, before a valid lien can be secured thereon."

There can be no question that a power line, consisting of poles set in the ground and wires strung thereon, would pass as appurtenant to one's land upon the owner executing a conveyance of the soil upon which the poles of the power line stood or were imbedded. That such a power line comes within the term "improvement," we think beyond controversy just as much as a water ditch or an irrigation canal.

In *Ogden* v. *Byington*, 198 Cal. 151 [244 Pac. 332], the supreme court of this state, speaking through Justice Richards, takes up and considers the element of permanency in relation to improvements made upon land and shows when and in what instances irrigation ditches come within the lien law, depending upon the permanent character of such improvement.

In *Mendoza* v. *Central Forest Co.*, 37 Cal. App. 289 [174 Pac. 359], this court, in a case where a rehearing was denied by the supreme court, held as follows (quoting from the syllabus): "Under section 1183 of the Code of Civil Procedure, providing for mechanics' liens on specified improvements 'or other structure,' farm development consisting of ditches, drains, embankments, and roads, so correlated as to form one harmonious entity designed to convey water to and distribute it over the land, and constituting a permanent improvement thereto, increasing its value, is a 'structure.' " In the opinion in that case we find the following definition quoted from volume 27 of Am. & Eng. Ency. of Law, second edition, page 191, as follows: "In the broadest sense a structure is any production or piece of work artificially built up or composed of parts joined together in some definite manner." A power line is composed of definite parts; it is artificially built up, the parts are joined together in a definite manner, and it constitutes a construction having permanency and fixedness of place and a usefulness of purpose in connection with the soil. As to what constitutes a structure under section 1183 of the Code of Civil Procedure is also considered at length in the case written by Justice Richards in the case of *Western Well Works, Inc.*, v. *California Farms Co.*, 60 Cal. App. 749 [214 Pac. 491]. It was there held that a well sunk by the appellant constituted a structure within the meaning of that word as used in section 1183 of the Code of Civil Procedure. Practically all the California cases on this subject are there cited.

We may also refer to the case of *Williams* v. *Mountaineer G. M. Co.*, 102 Cal. 134 [34 Pac. 702, 36 Pac. 388], and *Silvester* v. *Coe Quartz Mine Co.*, 80 Cal. 510 [22 Pac. 217], being instances where the word "structure" has been held to apply to shafts and tunnels. In the case of *Roebling Sons Co.* v. *Bear Valley Irr. Co.*, 99 Cal. 488 [34 Pac. 80], two questions were presented to the supreme court: Whether a telephone line was a structure within the meaning of the lien law of this state and whether the evidence showed that the materials furnished entered into the construction of the same. Without passing upon the question as to whether the telephone line constituted a structure, the court remanded the cause for a new trial on the ground

that the testimony did not show that the materials furnished were used in the construction of the same, inferentially inducing the conclusion that the court was of the opinion that a telephone line was a structure. Otherwise the cause would not have been reversed and sent back for trial upon the single question of whether the materials furnished entered into the construction of the same.

The only case where the question we are now considering came directly in point, to which our attention has been called, is that of *Forbes* v. *Willamette Falls Electric Co.*, 19 Or. 61 [20 Am. St. Rep. 793, 23 Pac. 670]. Under a statute identical with ours in regard to the words "other structure," the supreme court of Oregon, in a case having to do with the determining whether a lien could exist against an electric power line, used the following language: "The principal question litigated on this appeal is whether or not this statute gives a lien for labor against the property described in the complaint; in other words, do these poles planted in the ground, connected together with wires and insulators constitute a structure, within the true intent and meaning of this statute? In answering this question, but little aid can be had from the decisions of other states; for the reason that no general principle of law is involved, and such decisions have generally turned upon the special or peculiar phraseology of the particular statute. Without attempting to indulge in any refined distinctions or definitions, and having in view the object and purpose of the enactment in question, I think it may properly be held that the poles, wires, insulators, etc., mentioned in the complaint, constitute a structure, within the meaning of the statute, and that the same is subject to a lien for labor performed thereon. In reaching this conclusion, we do not find it necessary to go as far as the court did in *Helm* v. *Chapman*, 66 Cal. 291 [5 Pac. 352], where it was held that a mine or pit sunk within a mining claim was a structure, within the meaning of the statute giving a lien on a building, improvement, or structure."

That decisions from other states are of little value in considering our statute arises from the fact that in almost every instance which we have examined there is a difference in the wording employed by the legislature, but in the Oregon case the language is identical with our own and

we think the holding of the court in that case conforms with the intent of section 15 of article XX of our constitution and the enactments of the legislature as expressed in section 1183 of the Code of Civil Procedure, and that an electric power line consisting of poles and wires strung thereon, insulators, and such materials as enter into the work constitute a structure upon which materialmen may be entitled to a lien, other provisions of the law necessary to the enforcement thereof being complied with.

The conclusion from the premises which we have laid down necessarily follows that finding No. 26, which is partly a finding of facts and also a conclusion of law, in so far as it is a finding of facts by reference to other findings showing the erection of the power line, as we have herein stated, is correct, but that, in so far as it is a finding of fact or a conclusion of law that the power line so erected is not a structure, as defined by the mechanic's lien law of this state, it is contrary to the provisions of section 1183 of the Code of Civil Procedure.

[4] Finding No. 27, as we have said, is to the effect that a power transmission line was built upon a public highway owned and controlled by the state of California, used for highway purposes, and is not subject to any lien. Upon this finding, as well as upon finding No. 26, the trial court based its judgment.

To what extent the tracts of land owned by the defendants along Clayton Avenue are coincident with the half mile stretch of the power line does not appear in the findings. Hence, we pass by the usual presumption that the owner of the land along a highway has title to the center thereof and base our opinion as to this branch of the case upon the following excerpt taken from section 15, volume 17, page 28, of California Jurisprudence: "Lien claimants are given a lien 'upon the property upon which they have bestowed labor or furnished materials,' as well as upon the land upon which any building, improvement, well or structure is constructed, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, if at the commencement of the work or the furnishing of materials the land belonged to the person causing the improvement to be undertaken; if he owned less than a fee, only his inter-

est is subject to the lien, except as the owner of the fee may have failed to give notice of nonliability, as provided in section 1192 of the Code of Civil Procedure. Under these statutory provisions, the lien on the building, or other structure, is the primary thing, and the lien in the land is merely an incident to it. No lien can be acquired on the land if none is acquired on the building, but a lien may exist on the building without attaching to the land. Hence it is not essential to the existence of a mechanic's lien on a building that the person causing its erection should have owned or had any interest in the real property on which it is located. This distinction between land and superstructure, the lien attaching primarily to the latter, and to the former only as it was embraced in a common ownership with the building, has existed in California from the very earliest times."

A number of cases are there cited supporting the rule stated in California Jurisprudence, only two of which need be cited: *Linck* v. *Meikeljohn,* 2 Cal. App. 506 [84 Pac. 309], and *McGreary* v. *Osborne,* 9 Cal. 119. This disposes of the contention that the property was so situated as not to be subject to a materialmen's lien.

The objection that one Frank Souza was not made a party defendant, as urged by the respondent, is answered by finding No. 23 of the court, to the effect that Souza was not interested in the half mile power line referred to, but only in a short private line to be connected therewith.

The judgment is reversed.

Thompson, J., *pro tem.,* and Finch, P. J., concurred.