[Civ. No. 935.  Fourth Appellate District.—June 13, 1932.]

HAYWARD LUMBER & INVESTMENT COMPANY (a Corporation), Appellant, v. W. S. STARLEY et al., Respondents.

LeRoy B. Lorenz for Appellant.

Wright & McKee, C. M. Monroe and G. C. Thomas for Respondents.

BARNARD, P. J.—Charles Victor Hall, being the owner of a tract of real property in San Diego County, conveyed it to the Southern Trust & Commerce Bank early in September, 1926, receiving back a declaration of trust providing that the bank should have power to subdivide and sell the property, to execute contracts of sales and conveyances, to receive all payments and to take steps for foreclosures and the like, that the bank was to make certain advances for the improvement of the property and providing for the payment to Hall of the net proceeds from time to time. Later, the property was conveyed to the Bank of Italy National Trust and Savings Association as successor to all the rights and obligations of the Southern Trust & Commerce Bank. On December 21, 1927, a sales agent received from W. S. Starley and his wife a down payment of $50 in connection with four lots in this tract. A receipt was given reciting: "for an option to purchase" the lots "at the total price of $4,697.00 payable $50 cash herewith and $647.00 cash within 11 days

from date hereof'', and the balance in installments. The receipt also stated that it was given "preliminary to the execution of a contract of sale". On January 3, 1928, a further payment of $647 was made by Starley to the agent and a similar receipt given, reciting it was for an option to purchase the lots "at a total price of $4,697.00 payable $647.00 cash herewith and $50.00 cash on 12–21–27, balance of $4,000.00 payable as follows: $242.40 on or before July 1, 1928, $3,757.60 on or before 10 years—Trust Deed to be given with interest at seven per cent per annum, payable quarterly on unpaid balances", and that it was preliminary to the execution of a contract of sale. No contract was ever executed, but on April 17, 1928, Starley paid to the agent the sum of $242.40 and at the same time executed a note and trust deed for the balance of the purchase price, the note being payable to Hall and the trust deed being to the Bank of Italy, as trustee for the benefit of Hall, securing this note. The note and trust deed were sent to the Bank of Italy to be placed in escrow pending the completion of the deal. The Bank of Italy ordered a preliminary report on the title company on April 25, 1928, and executed a deed conveying the property to the Starleys on April 30, 1928, but did not record or deliver the same until later.

During April, 1928, Starley approached the plaintiff and arranged to purchase materials with which to erect certain buildings on the property. He testified at the trial that he then informed the plaintiff that the property was subject to this trust deed securing the balance of the purchase price. Starley and his wife then executed and delivered to the plaintiff a trust deed for $6,000 covering this property. On May 2, 1928, the plaintiff sent this trust deed to a title company, asking them for a policy of title insurance when they could show the property vested in Starley or his wife, subject to the trust deed. On May 17th the manager of the plaintiff company telephoned to the title company and was informed that the trust deed had not yet been recorded. On the same day the title company wrote the plaintiff that it might not be able to record the trust deed as directed. On that day the plaintiff furnished Starley with twine and stakes for preliminary work, of the value of $2.39. On May 18th the title company advised the plaintiff that the title to the property in

question was in the Bank of Italy National Trust and Savings Association, giving them a formal report to that effect three days later. Small amounts of material were furnished by the plaintiff on May 18th, May 19th and May 22d, and larger quantities thereafter until the buildings were completed in August, 1928. On May 26th the plaintiff wrote the bank, stating:

"We are contemplating making a loan to W. S. Starley and wife who we understand are buying this property on contract from your bank, and we would appreciate your advising us the balance still owing on their contract."

The bank replied on June 5th that the unpaid balance was "$3.757.60 with interest from April 18, 1928 at 7%". On June 26, 1928, the deed from the bank to the Starleys and the trust deed back to the bank were both recorded. On August 11, 1928, plaintiff delivered the last of the materials to Starley and thereafter a notice of mechanic's lien was filed, followed by this action to foreclose the same. At the time the plaintiff commenced to furnish the materials, the property in question was unimproved and uninclosed. It is undisputed that both Hall and the bank had no notice or knowledge that Starley had attempted to take possession of the land or commence improvements on the property or that the plaintiff had furnished any materials therefor until some time after June 26th. At the trial of the action, the court found in favor of the plaintiff in so far as its lien against the Starleys is concerned, but found and held such lien to be subordinate to the trust deed to the bank. From this portion of the judgment the plaintiff has appealed, the only question presented being as to whether or not the lien of the plaintiff has priority over this trust deed.

Appellant's main contention is that its lien accrued on May 17, 1928, while the lien of the trust deed accrued on June 26, 1928, and, therefore, under section 1186 of the Code of Civil Procedure and section 2897 of the Civil Code, its lien must be held superior to that of the trust deed. Appellant assumes that its lien accrued on May 17, 1928, because it began to furnish materials on that date. Under section 1185 of the Code of Civil Procedure such a lien would have arisen at that date if the land in question belonged to the person who caused the building to be

erected, but where such a person owned less than a fee simple, the lien would cover only the interest of that person unless, as provided under section 1192 of this code, the owner of any other interest in the property had knowledge of such construction work and failed within the allotted time to record a notice of nonliability. Neither the evidence nor the findings support the conclusion that the appellant acquired a lien on May 17th. At that time the legal title was in the bank with a beneficial interest in Hall and neither of them consented to or knew of the building operations. ▇ The court found that at that time the bank was in possession and entitled to the possession of the property. The appellant attacks this finding on the ground that the only evidence in the record shows that Starley was in possession. The only evidence to this effect is the testimony of one witness that when the materials were first sold to Starley this witness saw Starley on the property with two other men who were working for him. Nothing in the receipts purporting to be options for the purchase of this land gave to Starley any right of possession, and nothing therein indicates an intention on the part of the parties that the vendee was to have possession until legal title passed. Under these conditions, the right of possession remained in the vendor (*Crane* v. *Ferrier Brock Development Co.,* 164 Cal. 676 [130 Pac. 429]). While of no great importance, the finding that the bank was entitled to possession is sustained by the evidence. ▇ Under sections 1185 and 1192 of the Code of Civil Procedure the appellant failed to prove facts showing that its lien attached on May 17, 1928, as against the interest owned by the bank and Hall, since the one ordering the work was not the owner in fee and the owner of the other interest had no knowledge of the building operations. No reason appears why the appellant is in a better position with the Starleys claiming under an uncompleted option or an oral agreement carrying no right of possession, than it would have been in had a written contract, giving a right of possession, been executed, delivered and recorded.

▇ Nor do we think the appellant acquired any lien on June 26th as against the interest of the bank and Hall. At that time the appellant had acquired no lien and the deed to the Starleys and the trust deed back were recorded

simultaneously. Then for the first time, the Starleys were given the right of possession of the property, became the owners thereof, and when the first materials were delivered thereafter, the lien of the trust deed had already attached.

It further appears, and the court found, that at the time the appellant began to furnish materials for these buildings, it had knowledge that the title to the property was vested in the respondent bank and that the purchase price agreed upon had not been paid by Starley. Under the existing circumstances, it must be held to have furnished the materials subject to the rights of the bank and Hall in this property (*Keeling Collection Agency* v. *Penziner*, 123 Cal. App. 296 [11 Pac. (2d) 24]).

Some contention is made that respondents Hall and the bank proceeded upon the wrong "theory"; that their pleadings show a claim as encumbrancers and not as owners; and that they cannot be considered as owners during any of the time involved, with their interest protected in the absence of knowledge of the building operations. Their answers denied the allegations of the complaint, and the burden was upon the appellant to show facts entitling it to a lien. In its complaint the appellant alleged that "at all times herein mentioned the defendants W. S. Starley and Emma R. Starley have been and now are the owners" of this property, but this it did not prove. It is true that these respondents also answered that they then claimed under their trust deed. Having conveyed to the Starleys they could not allege that they were owners at that time. But the issues brought out the evidence, which, with the pleadings and findings, supports the judgment.

Appellant complains that a finding to the effect that Starley executed a note payable to the Bank of Italy is not supported by the evidence. Admittedly the note was originally made payable to Hall and secured by the trust deed to the bank, with Hall as the beneficiary. Subsequently the note was assigned to the bank in trust. In its judgment the court adjudged as follows: "That the defendant, Bank of Italy National Trust and Savings Association, has a first and prior lien . . . under and by virtue of a trust deed conveying said property, recorded on the 26th day of June, 1928, in Book 1482 at page 314 of Deeds, records of San Diego County, California, said lien being to secure the

balance due on a promissory note dated April 18, 1928'', describing the note in question. While this court has the power to correct this finding, it is so immaterial that we do not regard it as necessary to do so. Both Hall and the bank were parties to the action, and it can make no difference to the appellant whether the note was originally made payable to the bank or to Hall. It was secured by this trust deed, the effect of which is not dependent upon which of these two respondents happened to have the beneficial interest therein. In its opening brief the appellant sets out certain other findings as being unsupported by the evidence. In its reply brief it abandons these contentions as immaterial. While we do not regard the findings referred to as immaterial, they are all supported by the evidence.

No other points are raised which require discussion. Not only did the appellant fail to establish its lien against the interest of the bank and Hall, but it appears that it had knowledge of the situation existing before it began to deliver the materials. While a most ingenious argument is presented in support of appellant's claims, in our opinion its position is without merit. The portion of the judgment appealed from is affirmed.

Jennings, J., and Scovel, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 12, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 11, 1932.