[Civ. No. 1917. Fourth Appellate District.—October 17, 1935.]

N. D. McDOWELL, Appellant, v. W. H. PERRY, Respondent.

F. F. Gualano and J. B. Joujon-Roche for Appellant.

Arthur William Green and C. H. Scharnikow for Respondent.

JENNINGS, J.—The plaintiff instituted this action for the purpose of securing a personal judgment against the defendants Perry and France, and to foreclose a mechanic's lien for labor performed and materials furnished in connection with the drilling of a well upon land owned by Perry which he had contracted to sell to France prior to the time plaintiff commenced drilling operations. Trial of the action resulted in the entry of a judgment against defendant France, who defaulted in appearance, and in favor of Perry. From the judgment thus rendered plaintiff appeals.

The facts pertinent to this appeal may be summarized as follows: On July 11, 1930, the respondent, who was the owner of a ranch in San Diego County, entered into a written agreement to sell a portion thereof to his codefendant France. The contract recited that the vendee had paid to the vendor a specified sum of money solely as consideration to the latter for his signature to the agreement and for the restraint imposed upon his freedom to deal with or alienate the property and not as partial consideration for the conveyance of the land or as part of the purchase price. It was, however, provided that the vendee should, on or before August 15, 1930, deposit in a

bank in the city of Los Angeles the sum of $10,000 "the purpose of said fund being to enable said France to and to assure that France will, drill a water well upon" a described parcel of the land mentioned in the contract to such depth that it would tap a source of artesian water, to case and equip the well, installing engine, pump, and tanks, to construct a pipe line from the well to another parcel of the land covered by the agreement and to install an adequate irrigation system for irrigating a certain 40 acres of said land and to plant said 40 acres to avocados. It was recited that the purpose of the fund was also to pay to the vendor the whole thereof on September 15, 1930, unless the actual drilling of the well should have been commenced before said date and to pay the vendor on March 1, 1931, all of the fund which had not before said date been disbursed for the purposes described. It was specified that if the vendee had fulfilled the contract and any portion of the aforesaid sum of $10,000 were unused, such unexpended remainder of the fund should be paid to the vendee. It was provided that *bona fide* bills for labor and materials furnished in the performance of the required work should be paid by checks drawn against the fund by the vendor and vendee. It was further provided that if deposit of the specified sum of $10,000 were made on or before August 15, 1930, the vendor would place in escrow with a bank or trust company in Los Angeles a grant deed executed by himself and wife conveying the land to the vendee and the vendee agreed that he would forthwith deposit in said escrow a promissory note executed by himself and wife in favor of the vendor in the amount of $48,288 bearing date August 20, 1930, payable five years thereafter with interest at 7 per cent per annum and a trust deed securing the payment of said note. It was further specifically provided that the grant deed to be executed by the vendor should reserve to the vendor all water under the parcel of land whereon the well would be drilled with the proviso that the grantee and his successors and assigns should have a perpetual and first right to take and use 30 miner's inches of any water developed by the well at any and all times.

The sum of $10,000 was never deposited by the vendee as required by the agreement but the vendor later orally agreed that he would not insist upon its deposit.

On November 15, 1930, the vendee entered into a written contract with appellant wherein it was recited that the latter was engaged in the business of drilling water wells and developing water and appellant agreed that, immediately after the execution of the contract, he would, at the cost and expense of the vendee, drill a test hole on the land for a water well to the depth of 1,000 feet to determine whether or not water could there be produced in sufficient quantity for commercial use and if both parties agreed that it could be so developed he would ream out the test well and case it and that he would furnish all labor and equipment necessary for the completion of the well. The vendee agreed, first, that he would pay appellant "for all labor, trucking, bits, maintenance, and any other costs pertaining to the well plus ten per cent of total cost"; second, that he would furnish water for drilling; third, "as further compensation for services rendered" he would pay appellant "a certain per cent of profits in sale of above-described properties upon which the water is used". Reference was made to another agreement attached to the contract as fixing the percentage of such profits. The agreement to which reference was thus made provided that the vendee, France, agreed to pay appellant the total sum of $12,500 for the completed water well, that from said sum of $12,500 the vendee should deduct the actual cost of drilling said well plus 10 per cent thereof which should be the amount that the vendee would owe appellant on completion of the well and that the vendee would pay the difference between said sum of $12,500 and the actual cost of drilling the well plus 10 per cent thereof by giving him 10 per cent of the net proceeds which the vendee should receive from total gross sales of the property described in the main contract of the parties.

The evidence showed that the respondent, vendor of the land, first saw appellant on the ranch in company with the vendee, France, and another man on September 10, 1930. As to what was then said by respondent to appellant the evidence is conflicting. The appellant, however, testified that respondent furnished him a tank, an engine, and a bunkhouse for his men. This testimony was not disputed by respondent. France, the vendee of the land, called as a witness by respondent, testified that in November, 1930, prior to the execution of the written agreement between vendee and appellant, he

had a conversation with appellant, concerning the proposed employment of appellant to drill the well, at which time he stated to appellant that he was unable to deposit the sum of $10,000 required by his contract with respondent, that he would attempt to arrange with respondent to waive this requirement and felt hopeful that he would succeed in securing the waiver, that he then exhibited to appellant certain securities from which he stated that he might be able to obtain sufficient funds to meet the cost of labor and material required for drilling the well, and that, at said time, appellant stated "that he would be willing to play along with him, and that if he (France) felt that he could raise sufficient money to pay the cost of labor and materials he would enter into a contract to drill the well, upon a cost plus 10 per cent basis and would agree with him (France) to enter into a further agreement for a percentage of the profits from the proposed subdivision and sale of the lands being purchased by him (France) from Mr. Perry". This witness further testified that thereafter and prior to the execution of the agreement of November 30, 1930, between himself and appellant, he notified appellant that he made arrangements with respondent, Perry, whereby the contract requirement for the deposit of the $10,000 fund would be waived. The appellant testified that he was not informed and never knew of the vendee's failure to deposit the sum of $10,000 as required by the terms of the contract of sale. The evidence further showed that on November 24, 1930, after appellant's well-drilling equipment had arrived on the land, the respondent caused seven notices of nonresponsibility for the construction of any wells to be posted in various conspicuous places on the property, including a well from which the workmen who were doing the work of drilling obtained water, a gate through which the workmen passed in going to and from the bunkhouse which they occupied, and a location approximately 125 feet distant from the site of the well which was being drilled. It was also shown that the respondent caused a verified copy of the notice of nonresponsibility to be recorded in the office of the county recorder of San Diego County on December 2, 1930. It further appeared that the well was not completed and that the actual cost of drilling, together with the cost of materials furnished for the work, plus 10 per cent of such cost, amounted to $2,823.91, that payment of this amount was de-

manded of the vendee, France, that no demand for the payment of the above-mentioned sum was made of respondent, Perry, and that no part of said sum was paid.

The trial court found that respondent had not entered into an agreement with appellant for the drilling of the well, that respondent had not agreed to pay for labor and materials the sum demanded by appellant or any other sum, that the contract of November 15, 1930, was entered into solely between appellant and the defendant, France, and that it was not true that the defendant, France, was acting as the agent of respondent, Perry, when he made the contract for drilling the well with appellant. The court also found that the notice of nonresponsibility was posted and recorded in full compliance with the provisions of section 1192 of the Code of Civil Procedure. From these findings the court drew the legal conclusion that respondent, Perry, was not indebted to appellant in the amount claimed by the latter or in any amount, and that the respondent was entitled to judgment against appellant for his costs of suit. Judgment in respondent's favor was accordingly entered in conformity with the conclusions of law drawn from the court's findings.

The single contention advanced by appellant on this appeal is that the trial court's finding that the defendant France, in entering into the contract of November 15, 1930, with appellant for the drilling of the well, was not acting as the agent of respondent, Perry, is not only lacking in evidentiary support but is contrary to the evidence and that consequently the judgment which denies to appellant a lien for the amount claimed for work performed and materials furnished in connection with the drilling of the well is erroneous and must be reversed.

The basis of this contention is that the drilling of the well was specifically required to be done by the provisions of the written contract of purchase and sale of the land entered into between respondent as vendor and France as vendee and formed an integral part of the consideration to be furnished by the vendee for the proposed conveyance of the land. It is urged that the terms of the aforesaid contract requiring the drilling of the well by the vendee made him the vendor's agent as a matter of law and subjected the vendor's interest in the land to the mechanic's lien claimed by appellant for labor and materials furnished by the latter and that the

agency thus created may not be annulled by a notice of non-responsibility. Appellant concedes that this precise question has never been decided in California. In support of his contention he cites a number of decisions from other jurisdictions and maintains that the weight of authority in the United States sustains his position.

Examination of the decisions relied upon by appellant discloses that the agency which he contends was created by the provisions of the sale contract is generally denominated "statutory agency" and that, in the final analysis, its existence depends on judicial interpretation of the mechanic's lien statutes of the various states wherein the question arose. Since this is true, it is obvious that the only key which may properly be employed in the solution of the problem here presented must be found in the provisions of our own statutes.

The statute which confers upon various designated persons a lien upon property for labor performed and materials furnished in the improvement of such property, which lien is commonly denominated a "mechanic's lien" is section 1183 of the Code of Civil Procedure. This section provides that all persons performing labor upon or furnishing materials to be used or furnishing appliances contributing to the construction of any well shall have a lien upon the property upon which they have bestowed labor or furnished materials for the value of such labor done and materials furnished "whether at the instance of the owner, or of any other person acting by his authority or under him, as contractor or otherwise; and every contractor, subcontractor, architect, builder or other person having charge of the construction . . . of any building or other improvement as aforesaid shall be held to be the agent of the owner for the purposes of this chapter".

It must be apparent, we think, that so far as this particular statute is concerned the only language thereof which lends any support to the possibility of the existence of the statutory agency contended for by appellant is the following: "Whether at the instance of the owner, or of any other person acting by his authority or under him, as contractor or otherwise." The language which declares that "every contractor . . . or other person having charge of the construction . . . shall be held to be the agent of the owner" obviously refers to a definite class of persons who are engaged in the actual performance of the specified work. It could hardly be contended that a

vendee of land under a contract of sale which specifically provided that he was required to make a designated improvement on the land and who thereupon entered into a contract with a third person for the doing of the work is a contractor in the sense in which the term is there used.

The language "whether at the instance of the owner, or of any other person acting by his authority, or under him, as contractor or otherwise" is manifestly not so restricted as the language last considered. However, it is obvious that the question of whether or not a person who orders work to be done and materials furnished is acting by authority of the landowner is a question of fact to be determined by the trier of facts from the evidence adduced. The trial court has found, impliedly at least, that the vendee who was obligated by his contract to drill a well on the land was not acting by the authority of the vendor in making the particular contract which constitutes the basis of appellant's claim to a lien upon the land. This finding has ample evidentiary support. ■ The contention that the vendee in contracting with appellant for the drilling of the well was acting by the authority of the vendor depends solely on the fact that the contract between respondent and France obligated the latter to drill a well. It is our conclusion that the basis for the contention does not fulfill the statutory requirement and that the burden rested upon appellant to show that the person to whom he furnished labor and materials for the drilling of the well was authorized by the landowner to contract for the furnishing of the very labor and materials that were used in the drilling of the particular well for which appellant claims a lien. ■ The circumstances of the case indicate the reasonableness of this construction. The evidence showed that appellant was fully familiar with the provisions of the contract between respondent and the defendant, France, prior to the time he did any work on the well. He was acquainted with respondent and had talked with him. He could easily have discovered whether or not France was authorized by respondent to contract for the furnishing of the labor and materials which he proposed to furnish and at the price which he proposed to charge therefor. Furthermore, the evidence showed that on the day following the arrival of appellant's well-drilling equipment on the land seven notices signed by

respondent were posted at various conspicuous places on the land. These notices stated that respondent was the owner in fee of the ranch which was legally described, that he had entered into an agreement with France on July 11, 1930, whereby France agreed to purchase portions of the ranch and to drill wells thereon and otherwise to improve the property. The notices concluded with a statement that the signer would not be responsible for the drilling of any wells or for any materials or labor of any kind furnished to France. It is neither disputed that these notices were posted on the land nor did appellant deny that he had seen them. Appellant was therefore fully apprised that France was not in fact authorized by the owner of the property to act for him in the well-drilling operations and that the owner disclaimed responsibility for any materials furnished or work performed in the drilling of any wells. This evidence negatives appellant's contention of statutory agency by the showing that no actual agency existed and that appellant was fully advised thereof.

The case of *P. W. Wood, Inc.,* v. *Blalack,* 86 Cal. App. 572 [261 Pac. 737], is factually similar to the instant action. In the cited case the contract of lease of a building provided that the lessees should keep the premises in good repair at their own expense without charge to the owner. The plaintiff furnished labor and materials used in repairing a boiler which formed part of the heating system of the building and being unsuccessful in collecting the price of such materials and labor from the lessees sought to impress a mechanic's lien upon the property and to foreclose the same. It appeared that the owner did not know of the repairs until some weeks after their completion. No notice of nonresponsibility was posted by the owner. The trial court found that plaintiff furnished labor and materials at the special instance of the lessee while acting as the agent of and under the authorization of the owner and entered judgment accordingly in plaintiff's favor foreclosing the lien upon the property. On appeal the judgment was reversed, the appellate court remarking that "in the absence, therefore, of proof of actual agency, or that the real owner of the premises had by his conduct so far concurred in such improvement as to be estopped to deny the validity of the lien, no lien can exist".

■ It may not be argued that the doctrine of estoppel is here applicable to fasten the claimed lien on respondent's land. The evidence is conclusive that respondent's conduct with reference to the drilling of the well for which the lien is claimed was not such as to indicate his concurrence in the improvement. On the contrary, he unequivocally manifested his nonconcurrence by prompt posting of numerous notices of nonresponsibility followed by recordation of a copy of the notice in the office of the county recorder in strict compliance with the provisions of section 1192 of the Code of Civil Procedure.

It is therefore our conclusion that the trial court's findings that the defendant France was not the agent of respondent in entering into the contract for the drilling of the well and that the contract was entered into solely between appellant and the defendant France are fully supported by the evidence and that appellant's objection of evidentiary insufficiency is not sustainable.

■ There is a further obstacle which is encountered in a consideration of appellant's contention which we deem to be insurmountable. Appellant maintains that he is entitled to a mechanic's lien not only upon the property upon which he had bestowed labor and for which he had furnished materials but also and, more particularly, upon the land whereon the well was drilled. That he might have been entitled, under proper circumstances, to a lien on the well itself, by virtue of the provisions of section 1183 of the Code of Civil Procedure may be conceded (*Western W. Works, Inc.*, v. *California F. Co.*, 60 Cal. App. 749 [214 Pac. 491]). That he is not entitled to a lien on the land under the peculiar circumstances of the case is, we think, established by statute and by numerous adjudications of California courts.

Section 1183 of the Code of Civil Procedure provides merely for the impressment of a mechanic's lien "upon the property upon which" lien claimants "have bestowed labor or furnished materials". It does not purport to confer a right to a lien on land. There is another statute which does provide for the impressment of a mechanic's lien on land. This statute is section 1185 of the same code whose title is "Land Subject to Lien" which provides that "The land upon which any . . . well . . is constructed, together with a convenient space about the same, or so much as may be required for the

convenient use and occupation thereof, to be determined by the Court on rendering judgment, is also subject to the lien. . . . '' The impressment of the lien on the land is, however, made subject to the condition that at the time of the commencement of the work or of the furnishing of materials the land shall have ''belonged to the person who caused said . . . well . . . to be constructed, altered or repaired''. The statute concludes with a provision that if the person who caused the improvement to be made ''owned less than fee simple estate in such land, then only his interest therein is subject to such lien, except as provided in section 1192 of this code''.

The undisputed evidence produced during the trial established that, at the time when the drilling of the well was commenced and when the first materials that were employed in the work were furnished, the individual who entered into the contract with appellant for the drilling of the well owned no other interest in the land than was provided by the terms of the contract of purchase which he had theretofore entered into with respondent, the owner of the land. The provisions of this contract leave no doubt that the title to the land remained in the vendor and that the obligation of the vendor to convey the land to the vendee was made conditional upon the deposit by the latter of a fund of $10,000 which was to be used in paying the expenses of drilling a well upon the land. It is not pretended that the fund was ever deposited. The vendee therefore did not, at any time which is material to the present inquiry, acquire the right to demand execution of a deed. It is obvious, then, that when the well-drilling operations were commenced and in fact during the entire time these operations continued the vendee had no interest whatever in the land. The time within which he was expressly obligated to deposit the fund had expired prior to the commencement of drilling operations. In any event, it was only the interest of the vendee which could be made subject to appellant's lien. The vendor's fee-simple estate could only be encumbered with the claimed lien by virtue of the provisions of section 1192 of the Code of Civil Procedure.

The last-mentioned statute declares that ''every building or other improvement or work mentioned in any of the preceding sections of this chapter constructed, altered or repaired upon any land with the knowledge of the owner . . . and the

work or labor done or materials furnished mentioned in any of said sections with the knowledge of the owner . . . shall be held to have been constructed, performed or furnished at the instance of such owner . . . and such interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner . . . shall, within ten days after he shall have obtained knowledge of such construction . . . give notice that he will not be responsible . . . '' The remainder of the section specifically describes the manner in which the notice of nonresponsibility shall be given. The trial court expressly found that the notice of nonresponsibility given by the respondent complied in all respects with the provisions of the last-mentioned statute. This finding is not attacked. It is clear, therefore, that the trial court correctly decided that respondent's fee-simple estate in the land was not subject to the lien claimed by appellant. The following California decisions furnish ample justification for the court's action in this regard: *McGreary* v. *Osborne*, 9 Cal. 119; *Humboldt Lumber Mill Co.* v. *Crisp*, 146 Cal. 686 [81 Pac. 30, 106 Am. St. Rep. 75, 2 Ann. Cas. 811]; *Harmon Lumber Co.* v. *Brown*, 165 Cal. 193 [131 Pac. 368]; *English* v. *Olympic Auditorium*, 217 Cal. 631 [20 Pac. (2d) 946, 87 A. L. R. 1281]; *Linck* v. *Meikeljohn*, 2 Cal. App. 506 [84 Pac. 309]; *Western Electric Co., Inc.,* v. *Colley*, 79 Cal. App. 770 [251 Pac. 331]; *Hayward Lumber etc. Co.* v. *Starley*, 124 Cal. App. 283 [12 Pac. (2d) 66].

In his notice of appeal appellant states that he appeals from the judgment "and also from the order of the court sustaining defendants' objection to the hearing of plaintiff's motion for a new trial". Examination of the record discloses that the judgment was entered on November 24, 1933, and that at some subsequent date appellant filed a notice of intention to move for a new trial. This motion was noticed for hearing on January 27, 1934, at which time respondent objected to its being heard on the ground that the court had lost jurisdiction to pass upon the motion in accordance with the provisions of section 660 of the Code of Civil Procedure. No contention is here advanced indicating that the court's action was erroneous. The statute provides that if a motion for new trial is not determined within a period of sixty days after service on the moving party of written notice of entry of judgment the effect shall be a denial of the

motion without further order. The effect of the court's order sustaining respondent's objection to the hearing of the motion amounted to a denial of the motion. It is settled that no appeal lies from an order denying a motion for a new trial. The attempted appeal from the order is therefore dismissed.

For the reasons stated, the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 16, 1935.