[Civ. No. 7962. Third Dist. Aug. 14, 1951.]

AMERICAN TRANSIT MIX COMPANY, INC. (a Corporation), Appellant, v. RICHARD F. WEBER et al., Respondents.

AMERICAN LUMBER COMPANY (a Corporation), Appellant, v. RICHARD F. WEBER et al., Respondents.

RICHARD F. WEBER, Respondent, v. FRANCIS O. RINALDI et al., Defendants; AMERICAN LUMBER COMPANY (a Corporation) et al., Appellants.

Myron Moyle and Frank B. Collier for Appellants.

Breed, Robinson & Stewart, H. L. Breed, Richard K. Dutton and Cleary & Zeff for Respondents.

VAN DYKE, J.—The three actions involved here were consolidated for trial and are consolidated on appeal. Two of the actions were to foreclose materialmen's liens. These actions were brought by the American Transit Mix Company, Inc., and American Lumber Company against Richard F. Weber, the owner of the land, and Francis O. Rinaldi, the person requesting the materials. The American Transit Company furnished materials in the amount of $242.16, and the American Lumber Company furnished materials in the amount of $2,832.31. Weber's defense to these actions was the posting and filing of notice of nonresponsibility in accordance with section 1192 of the Code of Civil Procedure. The answer of Rinaldi in each of the two lien cases was a general denial. Judgments were rendered against Rinaldi for the amount of the materials furnished and costs. Liens were not allowed against the lot and building thereon. The third action was brought by Weber to quiet title against Rinaldi, American Transit Mix Company, and American Lumber Company. The judgment quieted title in plaintiff against all defendants. American Transit Mix and American Lumber Company appeal from the judgments. Rinaldi has not appealed. The parties have presented a settled statement in lieu of reporter's transcript.

The record shows that Weber and Rinaldi entered into an agreement on January 18, 1948, under which Weber agreed to sell and Rinaldi agreed to buy certain property. The agreement provided for a purchase price of $1,000, with a down payment of $45, and monthly payments of $20 until January 18, 1951, when the balance became due. The agreement also provided: "In consideration of the small initial payment accepted by the vendor herein, vendee shall and does agree to forthwith begin the construction of and continue without undue delay the erection of at least one 'duplex' dwelling on said lot."

Rinaldi entered into possession of the premises and commenced the construction of the duplex on February 15, 1948. Appellants furnished materials at Rinaldi's request between March and September, 1948. Weber posted a notice of nonresponsibility upon the property February 20, 1948, and recorded a copy of the notice. Rinaldi paid only the down payment of $45, and being in default under the purchase agreement, a notice restoring time of the essence was served upon him January 6, 1949. Rinaldi remained in possession, and thereafter the action to quiet title was commenced.

Appellants contend that respondent Weber's notice of nonresponsibility was ineffectual to defeat the liens upon the lot and building thereon. We shall first discuss this contention as it relates to the claim of lien against the building. The case of *English* v. *Olympic Auditorium, Inc.*, 217 Cal. 631 [20 P.2d 946, 87 A.L.R. 1281], sustains appellants' contention. In that case the lessee was authorized under the provisions of the lease to construct an auditorium on the leased premises. The plaintiffs furnished labor and materials, and in due time filed their claims of lien. The lessor filed a notice of nonresponsibility in accordance with the provisions of section 1192 of the Code of Civil Procedure. By unlawful detainer action, the lessor evicted the lessee and nullified the lease. In the action to foreclose the liens upon the building and the land, the trial court denied all relief. On appeal, it was held that a lien attached against the building and that the owner's notice of nonresponsibility could not defeat it. The court pointed out the distinction between liens against improvements upon which the claimants had bestowed labor and materials and those against the land upon which the improvements stood. In commenting upon sections 1183 and 1192 of the Code of Civil Procedure the court states, page 639:

" '. . . Under these statutory provisions, the lien on the building, or other structures, is the primary thing, and the lien on the land is merely an incident to it. No lien can be acquired on the land if none is acquired on the building, but a lien may exist on the building without attaching to the land. Hence it is not essential to the existence of a mechanic's lien on a building that the person causing its erection should have owned or had any interest in the real property on which it is located. This distinction between land and superstructure, the lien attaching primarily to the latter, and to the former only as it was embraced in a common ownership with the building, has existed in California from the very earliest times.' "

In discussing the effect of the termination of the leasehold estate upon the liens against the building, the court states, page 640:

" 'Having reached the conclusion that the lien upon the building exists separately from the land, the unlawful detainer action by which the respondents herein had the lease declared forfeited as to the Auditorium Company and thus obtained possession of the property, becomes immaterial. However, the lease itself provides that the lessee may erect

a building and, further, that any improvements erected could not be removed by the lessee. Thus respondents have by their own voluntary act made the building a part of their land and therefore have taken the same, burdened with the liens of plaintiffs and which liens do not depend upon the leasehold interest of the Auditorium Company.

" 'Should the lien laws be so interpreted as to destroy the liens because the leasehold interest has ceased to exist, such interpretation would render such laws unconstitutional. (Sec. 15, art. XX, Cal. Const.)' "

We conclude that the termination of the land purchase contract by the decree in the quiet title action did not nullify appellants' liens against the building. Respondent Weber attempts to distinguish the English case upon the ground that a lessor-lessee relationship there existed. As the lien relates to buildings and improvements, we see no distinction. In commenting upon this subject, the writer in 22 California Law Review, page 319, states:

"The question arises whether in the light of the Olympic [English] case a mechanic placing a building on the land without the knowledge of the vendor, or after a notice of nonresponsibility has been filed by him, can claim a lien against the building and sell and remove it. It is submitted that he would clearly have this right under the holding of that case, as there is no fundamental difference between a vendor's position and that of a lessor in this respect." (See, also, *McDowell* v. *Perry,* 9 Cal.App.2d 555, 564 [51 P.2d 117].)

Also without merit is respondent Weber's contention that the vendor's lien under the land purchase contract is superior to the lien of materialmen. In *Allen* v. *Wilson,* 178 Cal. 674 [174 P. 661], it was held that an owner who has given an executory contract to sell land and let the vendee into possession without a deed remains the "owner" within the lien statute, and until the deed is given he does not stand in the position of a holder of a vendor's lien. (Also see *Oaks* v. *Kendall,* 23 Cal.App.2d 715, 721 [73 P.2d 1255].)

Respondent contends that the claim of lien of the American Transit Mix Company is fatally defective in its description of the property. The lot involved is Lot 2 in Block 3677 of Richland Tract, and the recorded lien describes the lot as Lot 2 in Block 2677 of Richland Tract. Section 1203 of the Code of Civil Procedure provides in part that no mistake or errors in the description of the property shall invalidate the lien, unless the court shall find that an innocent

third party without notice has, since the claim was filed, become the bona fide owner of the property liened upon, and that the notice of claim was so deficient that it did not put the third party upon further inquiry in any manner.

 Appellants further contend that the liens should also have been allowed upon the land or lot upon which the building was constructed. The contention is wholly based upon the provision in the sales contract entered into by respondent Weber and Rinaldi which obligated Rinaldi, as buyer, to construct the building. Appellants argue that this provision constituted Rinaldi as an agent of Weber within the contemplation of the lien law, and by reason thereof Weber could not avoid liability by posting a notice of nonresponsibility. Appellants rely upon *Ott Hardware Co.* v. *Yost*, 69 Cal.App. 2d 593 [159 P.2d 663]. The case involved the responsibility of a lessor to materialmen who furnished supplies to the lessee. That case held that *the entire estate or property* of a lessor may be subject to a mechanic's or a materialman's lien for improvements or repairs of the building on his property by a lessee where the terms of the lease and other writings covering the transactions show that the lessee acted as agent of the owner, was obligated to make the improvements and submit plans of the same to the owner for approval, and was to repay the lessee the estimated costs of the major portion of the improvements out of the rents of the premises and was to be entitled to a return of the leased property in an improved condition on breach of the conditions or covenants. Such a participating owner, it was held, was not entitled to relieve his property from liens by filing a nonresponsibility notice. (See, also, *Western Lumber & Mill Co.* v. *Merchants' Amusement Co.*, 13 Cal.App. 4 [108 P. 891], and *Hines* v. *Miller*, 122 Cal. 517 [55 P. 401].)

Appellants reason that the principles of the Yost case should apply to a land purchase contract where the buyer is obligated by such contract to place improvements upon the premises. We cannot agree with this reasoning. In the application of the lien law there is a fundamental distinction between the lessor-lessee situation and that of seller-buyer under a land purchase contract. The reason that the lessor cannot defeat the lien against the land in those instances where the lease obligates the lessee to improvements or repairs is well stated in *English* v. *Olympic Auditorium Inc., supra*, at page 643:

". . . In many jurisdictions mechanics' liens have been

held to attach, not only to the building but also the estate or property of the lessor for improvements made by the lessee, which improvements, by the terms of the lease are to belong or revert to the lessor, or are permanent in nature, becoming part of the realty and of benefit to the lessor. [Citing cases.] These cases are based on the theory that since the lease contemplates the construction of a building which will enhance the value of the fee to the benefit of the lessor, the lessee must be deemed the statutory agent of the lessor for the purpose of the construction.''

It is apparent that such considerations in the lessor-lessee relation are not present in the seller-buyer relation. In the latter case, the improvements vest in the buyer upon performance of the contract. During the term of the contract, the seller is benefited only insofar as his security interest is enhanced by reason of the improvement.

A similar contention was made in *McDowell* v. *Perry, supra.* The court held in an action to foreclose a mechanic's lien for the drilling of a well, where the drilling was contracted for by the vendee of the land upon which the work was done, the mere fact that the vendee was obligated by his contract with the vendor to drill the well did not of itself give authority to the vendee to bind the vendor, and in such case the lien did not attach to the vendor's estate in the land where a notice of nonresponsibility had been filed in accordance with section 1192 of the Code of Civil Procedure. The court states at page 562:

''. . . The contention that the vendee in contracting with appellant for the drilling of the well was acting by the authority of the vendor depends solely on the fact that the contract between respondent and France obligated the latter to drill a well. It is our conclusion that the basis for the contention does not fufill the statutory requirement and that the burden rested upon appellant *to show that the person to whom he furnished labor and materials for the drilling of the well was authorized by the landowner to contract for the furnishing of the very labor and materials that were used in the drilling of the particular well for which appellant claims a lien.''* (Italics added.)

We therefore conclude that the liens of appellants do not extend to the land upon which the building in question was erected.

It appears from the record here that there was no conflict in the evidence concerning the amount of the liens which

the claimants were entitled to if they were entitled to any liens at all. We think, therefore, that the appeals presented here may be disposed of without the necessity of any further trial proceedings.

In the cases of *American Transit Mix Company, Inc.,* a corporation, v. *Richard F. Weber et al.,* and *American Lumber Company,* a corporation, v. *Richard F. Weber et al.,* being respectively Nos. 38084 and 38085 in the records in the trial court, the judgments appealed from are reversed and the trial court is directed to enter judgments as follows: That plaintiffs have and recover of respondent Rinaldi the same sums which they were adjudged to recover from him in the judgments heretofore rendered; that the plaintiffs in those actions respectively have liens upon the building erected by said Rinaldi upon the land of respondent Weber; that said liens be foreclosed in accordance with law. In the case of *Richard F. Weber* v. *Rinaldi et al.,* being No. 38852 in the records in the trial court, the judgment is ordered modified so as to declare that the title of plaintiff to said building is subject to said liens. The cases are remanded for further proceedings in accordance therewith.

Peek, J., and Schottky, J. pro tem., concurred.