[L. A. No. 11653. In Bank.—March 31, 1933.]

JAMES G. ENGLISH et al., Appellants, v. OLYMPIC AUDITORIUM, INC., Defendants; LOS ANGELES ATHLETIC CLUB (a Corporation) et al., Respondents.

Dryer, Castle, McConlogue & Richards, Horton, Anderson, Horton & Armstrong, Rufus L. Horton, Jos. K. Horton, Dryer, Castle & Richards and Dryer, Castle & Hartke for Appellants.

Lawler & Degnan and Hunsaker, Britt & Cosgrove for Respondents.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, First Appellate District, Division Two, in order to give further consideration to several of the contentions of respondents. Upon such further consideration we are of the opinion that the contentions of the respondents are not sustainable and that the District Court of Appeal has properly disposed of the questions involved. For that reason, we adopt, as part of the opinion of this court, the following portions of the opinion prepared by Justice *pro tem.* Burroughs and concurred in by Presiding Justice Nourse and Justice Sturtevant:

"Four actions were brought to foreclose mechanics' liens. They were consolidated and became the above-entitled action.

"The appeals are by the plaintiffs from so much of the judgment entered August 16, 1928, as fails to give them liens upon the interest of the defendant, Los Angeles Athletic Club, a corporation, hereinafter referred to as the Athletic Club; and the interest of the defendant Title Insurance and Trust Company, hereinafter referred to as the Trust Company, in and to the land upon which the building in controversy is situated. The appeals are also from that portion of the said judgment which fails to give the plaintiffs any judgment against the Athletic Club or the Trust Company. The plaintiffs also appeal from the order of the court made on September 27, 1928, amending the conclusions of law and the judgment entered on August 16, 1928, and on October 6, 1928, entering different conclusions, and judgment, whereby the plaintiffs are deprived of liens given by the judgment

of August 16, 1928, upon the building erected on the land above referred to, and, they also appeal from that portion of the last-named judgment which fails to grant plaintiffs any relief against either the Athletic Club or Trust Company, and, also that portion which vacates and sets aside the judgment of August 16, 1928.

"The uncontradicted facts of the case found by the court are as follows: On November 1, 1924, the Athletic Club and Trust Company were the owners and reputed owners of a certain tract of land situated in the city of Los Angeles. On that day they leased said property to the defendant, J. M. Danziger for the term of twenty-five years at the annual rental of $25,000. Thereafter Danziger and wife assigned said lease to the defendant Olympic Auditorium, Inc., a Delaware corporation, hereinafter referred to as the Auditorium Company, and the latter also assumed all of the obligations of said lease. Said lease, assignment and covenant of assumption were in writing and were duly recorded in the office of the county recorder. By the terms of the lease, the lessee was authorized to construct an auditorium building on the leased premises at the sole cost and expense of the lessee. It was further provided in said lease that mechanics and other persons performing work on said building, or furnishing material therefor, were thereby given notice that any liens filed by them upon said premises should not in any manner affect the rights of the lessors in said building, and that the lessee should have no right to remove any improvements constructed upon the leased premises. On January 9, 1925, the Athletic Club and Trust Company, as owners, posted upon said premises a notice of nonresponsibility in the form required by section 1192 of the Code of Civil Procedure, and on said day recorded a copy thereof in the office of the county recorder of Los Angeles county, as required by said section; that said notice remained posted and the recorded copy thereof remained of record during the entire period of construction of the auditorium building. At the time the notice was posted as aforesaid, there had been delivered upon the premises six hundred board feet of lumber which was used to build a temporary platform in connection with ceremonies of ground-breaking held on January 10, 1925. Also, there was dug, before the said notice was posted, a test-hole not over six feet by ten feet by six feet deep, for

the purpose of testing the character and weight-bearing qualities of the soil, which information was necessary in preparing the plans and specifications for the building. The test-hole was thereafter used as a part of the excavation for the building. On the same day and shortly after the posting of said notice, the Auditorium Company also caused a large steam shovel to be moved onto the premises, near the test-hole. The shovel was operated the next day, January 10, 1925, as a part of the ground-breaking ceremonies, and, actually dug in on January 12, 1925. Thereafter, from day to day, work progressed on said building until its completion on or about September 10, 1925. Within due time after the completion of the building, these plaintiffs, not having been paid, filed their liens and in due time commenced these actions to foreclose them. Thereafter the Auditorium Company defaulted in the payment of rent and on August 17, 1926, the Athletic Club and Trust Company commenced an action in unlawful detainer against the Auditorium Company, to recover possession of said premises. On August 24, 1926, one James R. Masten was appointed a receiver by the District Court of the United States for said Auditorium Company, and he made application to the superior court for relief from the judgment of forfeiture of said lease, as provided by section 1179 of the Code of Civil Procedure. The court made an order granting the relief prayed for, but plaintiffs failing to comply with the terms of the order, the judgment of forfeiture has now become final. Thereafter the Athletic Club and Trust Company entered into possession of the Olympic Auditorium building and premises and have ever since remained in possession.

"The plaintiffs did not apply to the court in the last-named action for relief from the judgment therein, nor were any of them parties to said action. At all times during the pendency of the unlawful detainer action, the actions of these plaintiffs on the mechanics' liens were all pending in the superior court.

"Upon these findings, the trial court adjudged that the relief to which the plaintiffs were entitled was the sale of the Olympic Auditorium building unless within a specified time respondents paid the amount of their lien claims to plaintiffs. The court also concluded that as to plaintiffs, the lease had never been forfeited. After the entry of the judg-

ment aforesaid, the Athletic Club and Trust Company made a motion to vacate the judgment and to amend the conclusions of law to the effect that plaintiffs were entitled to a lien upon the building and to enter its judgment denying said lien. Upon a hearing of the motion, the court granted the same, and on October 6, 1928, judgment was entered accordingly.

"Appellants contend that the court erred in adjudging that the land upon which the building was erected was not subject to the plaintiffs' lien, because the Athletic Club and Trust Company, the owners of the land, had protected their title thereto against the liens by giving proper notice of nonresponsibility to lien claimants, as provided in section 1192 of the Code of Civil Procedure. Appellants claim that the notice was posted before the commencement of work on the building and was therefore ineffective for any purpose. Section 1192, *supra*, among other things, provides that the land upon which a building is erected by persons other than the owner or persons claiming an estate therein, is subject to mechanics and other designated liens, unless the owner or person having or claiming an estate therein, shall, within ten days after he shall have obtained knowledge that construction of a building is in progress on his land, among other requirements, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place on the land. The facts upon which the court based its findings of proper posting by the owners are above set forth and are undisputed, and are sufficient to sustain the judgment that the construction was actually begun before the notice was posted. It was a matter for the trial court to determine. In *Simons Brick Co. v. Hetzel,* 72 Cal. App. 1 [236 Pac. 357, 358] the holder of an unrecorded mortgage testified that when he went upon the premises for the purpose of ascertaining if any construction was being done, or if there was any evidence of a building being erected, there were no tools or materials of any description on the premises nor any evidence of a building being constructed. But, it developed from other evidence that a trench about sixty feet long and four feet deep had been excavated along the front of the lot, and it was held by the court that this alone was sufficient to put the holder of the mortgage on notice of a building being under

construction on the premises, and the mortgage, although recorded before any other work was done, was held to be subsequent to lien claimants under the Mechanics' Lien Law.

The court said on page five of the opinion: 'As to just what is meant by the term "commencement of work" and as to the amount and character of work necessary to be done upon a building in order to say that work has been begun thereon, we think the true rule is stated in Phillips on Mechanics' Liens, third edition, page 387, where it is said: "What this law means is some work and labor on the ground, the effects of which are apparent—easily seen by everybody; such as beginning to dig the foundation, or work of like description, which everyone can readily see and recognize as the commencement of a building." ' We think this rule should be applied in the case at bar. The object of such a notice is to bring home to those who are expending labor or materials upon a building, the fact that the owner of the land will not be responsible for such labor or materials. The notice must be posted on the ground within ten days after the owner has notice of the commencement of construction. Whether this has been done or not is, under *Simons Brick Co.* v. *Hetzel, supra,* a question of fact for the court to determine from the evidence before it. Here the court has found in effect that the digging of the test-hole of considerable size, afterwards used as a part of the excavation and the hauling of lumber on the premises, was a commencement of the work, sufficient to sustain the posting of the notice in accordance with the requirements of section 1192 of the Code of Civil Procedure, and it was within the province of the trial court to so decide, and we are not allowed to interfere with such finding. (*Hickman* v. *Freiermuth,* 21 Cal. App. 629 [132 Pac. 772].)

"The judgment of August 16, 1928, gave plaintiffs a lien upon the building itself down to the surface of the ground and directed that unless the owners paid the several amounts found due by the judgment within ninety days from the date thereof, the building would be sold to satisfy the lien claims. This portion of the judgment was set aside by the motion above referred to and the conclusions of law so altered as to deny a lien upon the building. And, on October 6, 1928, the judgment entered deprived plaintiffs of their liens upon the building. It is contended that this was

638

error. As we read the record, the above action of the court was based upon the fact that by the judgment in the unlawful detainer action, evicting the Auditorium Company from the premises and nullifying the lease, the plaintiffs were deprived of their lien upon the building. It is further contended by respondents that the plaintiffs not being entitled to a lien upon the land, it necessarily follows that the building, being a part of the real estate, was also relieved of the liens.

■ "The Constitution of the state of California (art. XX, sec. 15) is the basis of the Mechanics' Lien Law, and is as follows: 'Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished material, for the value of such labor done and material furnished; and the legislature shall provide, by law, for the speedy and efficient enforcement of such liens.' The language of the foregoing provision of our Constitution is clear and positive and gives a direct lien on the property upon which the classes named therein have bestowed labor or furnished material to the extent of the value thereof. In carrying out the above constitutional mandate, the legislature has provided by section 1183 of the Code of Civil Procedure that mechanics and materialmen shall have a lien upon the property on which they have bestowed labor and material, thus following the constitutional provision. ■ The legislature has distinguished between the ownership of the improvements made on the land and the land itself, in so far as the mechanics' and materialmen's liens are concerned. This is manifest by the enactment of section 1192 of the Code of Civil Procedure wherein it is provided that the landowner may protect his interest in the land from the lien by giving the notice of nonresponsibility as provided for in that section.

"*Mazzera* v. *Ramsey*, 72 Cal. App. 601, at page 606 [238 Pac. 101, 103], quotes with approval from *People* v. *Moxley*, 17 Cal. App. 466, 468 [120 Pac. 43], as follows: 'The lien of a mechanic or materialman is a constitutional right and attaches to the structure as the material is furnished or labor performed. The statutory procedure enacted for the enforcement of such right has reference only to the remedy.' (See, also, *Siegel* v. *Hechler*, 181 Cal. 187 [183 Pac. 664].)

"In *Western Electric Co., Inc.*, v. *Colley*, 79 Cal. App.

770, 778 [251 Pac. 331, 335], it is said: 'Lien claimants are given a lien "upon the property upon which they have bestowed labor or furnished materials", as well as upon the land upon which any building, improvement, well or structure is constructed, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, if at the commencement of the work or the furnishing of materials the land belonged to the person causing the improvement to be undertaken; if he owned less than a fee, only his interest is subject to the lien, except as the owner of the fee may have failed to give notice of nonliability, as provided in section 1192 of the Code of Civil Procedure. Under these statutory provisions, the lien on the building, or other structure, is the primary thing, and the lien on the land is merely an incident to it. No lien can be acquired on the land if none is acquired on the building, but a lien may exist on the building without attaching to the land. Hence it is not essential to the existence of a mechanic's lien on a building that the person causing its erection should have owned or had any interest in the real property on which it is located. This distinction between land and superstructure, the lien attaching primarily to the latter, and to the former only as it was embraced in a common ownership with the building, has existed in California from the very earliest times.'

"*Humboldt Lumber Mill Co.* v. *Crisp,* 146 Cal. 686, 688 [81 Pac. 30, 31, 106 Am. St. Rep. 75, 2 Ann. Cas. 811], is a case where it was sought to enforce mechanics' liens against the land. The structure being built thereon was burned before completion or any lien had been filed. Under this state of facts the court held there was no right of lien, and in commenting upon the distinction between the lien on the land and the lien on the building, says: 'A further reason why the lien should not apply to the land in this case is found in a consideration and comparison of sections 1183 and 1185 of the Code of Civil Procedure. The first of these sections gives a lien "upon the property upon which they have bestowed labor or furnished materials". The second section cited says that certain land "is also subject to the lien". In these provisions we see an intention of the legislature to make the lien on the building the principal thing, and the lien upon the land on which it is situated an inci-

dent· of the completion of the building, and that when the building is destroyed before completion, there can be no lien against the land on which it was being erected.'

"*Linck* v. *Meikeljohn,* 2 Cal. App. 506, 508 [84 Pac. 309], is in point. The building against which a materialman's lien was enforced was erected by a trespasser who had no interest in the title to the land upon which it was erected. The owner of the land raised one of the questions here presented that the building had become and was a part of the realty and therefore not subject to the lien. In answer to this claim the court says: 'It is true that where a building is constructed in a permanent manner upon land it becomes a part thereof, but if it is constructed with a lien thereon it becomes a part of such land subject to such lien. It would be grossly inequitable to say that one who may elect to treat a structure as a trespass and remove it, may elect to retain it, with knowledge that it is burdened with a lien, and yet hold it free from such burden.'

"*Harmon Lumber Co.* v. *Brown,* 165 Cal. 193, 200 [131 Pac. 368, 370], says: 'But the primary thing is the lien upon the building. The lien upon the land is incident thereto.' 17 California Jurisprudence, section 15, page 28, is authority for the rule that the lien upon the building upon which labor or material has been furnished is the primary thing and the lien on the land an incident to it, and that· this rule has existed in California from the earliest times.

▮ "Having reached the conclusion that the lien upon the building exists separately from the land, the unlawful detainer action by which the respondents herein had the lease declared forfeited as to the Auditorium Company and thus obtained possession of the property, becomes immaterial. However, the lease itself provides that the lessee may erect a building and, further, that any improvements erected could not be removed by the lessee. Thus respondents have by their own voluntary act made the building a part of their land and therefore have taken the same, burdened with the liens of plaintiffs and which liens do not depend upon the leasehold interest of the Auditorium Company.

"Should the lien laws be so interpreted as to destroy the liens because the leasehold interest has ceased to exist, such interpretation would render such laws unconstitutional. (Sec. 15, art. XX, Cal. Const.)

■ "It is claimed by the respondents that the action of the receiver appointed by the federal court, in applying under the provisions of section 1179 of the Code of Civil Procedure to be relieved from the effect of the forfeiture of the lease and the denial of the application by the court is binding upon appellants in this action because such application was made in a creditor's action authorized by the federal court and was made 'on behalf of himself and all other creditors of said Olympic Auditorium, Inc.'. However, the liens here sought to be foreclosed are not in any manner dependent upon the unlawful detainer action, but are liens upon the building itself and, as heretofore said, do not depend upon the existence of the lease. (Sec. 15, art. XX, Const. Cal.; sec. 1183, Code Civ. Proc.)

■ "It is also contended by the appellants that the equities of the case are in their favor and as this is an action in equity they should have been awarded a judgment of foreclosure of their liens. To this respondents answer that equity follows the law.

"There can be no doubt that the equities are with the plaintiffs. They have put into the building, in labor and material, many thousands of dollars for which they have not been paid and the building has cost the respondents nothing whatever. To turn it over to the defendants freed from the liens of plaintiffs would be grossly inequitable. While equity follows the law, we do not believe that it is necessary to give a strained construction to the law so that this costly structure may be given to the defendants without any return to the men who created it.

"As said in *Stimson Mill Co.* v. *Nolan,* 5 Cal. App. 754, 760 [91 Pac. 262, 264], in speaking of mechanic's liens, 'The right to declare such a lien is based upon the theory that the materialman and laborer produce the thing upon which the lien is declared.' In *Jones* v. *Great Southern Fireproof Hotel Co.,* 86 Fed. 370, 385, it is said by the court, in relation to statutes creating similar rights of lien: 'But the validity of such statutes need not be rested upon mere authority. They find sanction in the dictates of natural justice, and most often administer an equity which has recognition under every system of law. That principle is that everyone who, by his labor or materials, has contributed to the preservation or enhancement of the property of another,

thereby acquires a right to compensation.' Similar expressions are found in many cases and are applicable to the facts of this case.''

In addition to what has already been said, in reference to respondents' contention that a mechanic's lien cannot properly be imposed on a structure independent of the land upon which it is constructed, the following comments are pertinent. We are of the opinion that under the constitutional and statutory provisions applicable to mechanics' liens, as interpreted by the courts of this state in the cases above mentioned, it must be held that the mechanics' liens involved herein are a lien on the building independent of the land. The theory of mechanics' liens in this state is that the lien attaches primarily to the structure for which the materials have been furnished or labor bestowed, and the lien on the land is merely incidental to the lien on the structure. This distinction between land and superstructure, the lien attaching primarily to the latter, and to the former only as it is embraced in a common ownership with the building, has existed in California from an early date. (*McGreary* v. *Osborne*, 9 Cal. 119; 17 Cal. Jur., p. 29, sec. 15.) Any other interpretation would necessarily render unconstitutional those sections of the code purporting to relieve the owner from liability upon filing and posting a notice of nonresponsibility. The Constitution provides (art. XX, sec. 15) that mechanics ''shall have a lien *upon the property* upon which they have bestowed labor or furnished materials.''

The word ''property'' as therein used obviously refers to the building or other structure for which the materials have been furnished or labor bestowed, and not simply in the case of a tenant, to his leasehold estate. If the legislature attempted to limit this lien by the nonresponsibility statute such statute would necessarily be unconstitutional as an unauthorized limitation of the right granted by the Constitution.

The contention that because the building is a more or less permanent structure, attached to the realty, it must be held as against the mechanics to be a part of the realty is not tenable. It is true that as between the landlord and tenant it was agreed that the building when erected should become part of the realty, but that agreement could not affect the lien given by the Constitution to the mechanics.

It is our opinion, when a lease provides that the lessee may construct permanent structures on the leased premises, which structures at the termination of the lease shall become the property of the lessor, that it must be held by reason of the constitutional and statutory provisions above discussed that as far as mechanics are concerned the structure does not become a fixture until all mechanic lien claimants are paid. We think that this rule works substantial justice between the parties. In many jurisdictions mechanics' liens have been held to attach, not only to the building but also the estate or property of the lessor for improvements made by the lessee, which improvements, by the terms of the lease are to belong or revert to the lessor, or are permanent in nature, becoming part of the realty and of benefit to the lessor. (*Myers* v. *Joseph A. Strowbridge Estate Co.*, 82 Or. 29 [160 Pac. 135]; *Oregon Lumber etc. Co.* v. *Nolan*, 75 Or. 69 [143 Pac. 935, 146 Pac. 474]; *Denniston etc. Co.* v. *Brown*, 183 Iowa, 398 [167 N. W. 190]; *Loeff* v. *Meyer*, 284 Ill. 114 [119 N. E. 908]; *Long-Bell Lumber Co.* v. *McCray Band Co.*, 89 Kan. 788 [132 Pac. 992]; 40 Cor. Jur., p. 106, secs. 97 and 98, and cases cited.) ▮▮ These cases are based on the theory that since the lease contemplates the construction of a building which will enhance the value of the fee to the benefit of the lessor, the lessee must be deemed the statutory agent of the lessor for the purpose of the construction. In view of the nonresponsibility statute in this state, we do not feel justified in going that far and holding that the lien attaches to the land as well as to the building. We are of the opinion that, at least where the building of the improvement is optional with the lessee, the posting and filing of the notice of nonresponsibility by the lessor relieved the land from the lien. But we are of the opinion that under our mechanics' lien laws under which, as already pointed out, a lien may exist on a structure independently of the land upon which it is erected, it must be held that the lessor has consented that as against mechanics the building shall not become a fixture so as to cut off mechanics' liens. It is true that to remove the building will interfere, temporarily, with the owners' right of possession, but the owner must be deemed to have consented to this interference by entering into the lease knowing such

a building would probably be constructed on the leased premises.

For the foregoing reasons it follows that the conclusions of law drawn from the findings that the appellants were entitled to a lien upon the building down to the surface of the ground were correct, and the judgment of August 16, 1928, was the proper judgment. The conclusions of law that the plaintiffs were not entitled to a lien on said building and the judgment of October 6, 1928, based on such conclusions are erroneous.

It is therefore ordered that as to these appellants the order of the trial court of September 27, 1928, and the judgment entered October 6, 1928, be and each one of them is hereby reversed. It is further ordered that this cause be and it is hereby remanded with directions to the trial court to enter its conclusions of law granting appellants a lien upon the Auditorium building down to the surface of the ground, and to enter its judgment in accordance with the findings of fact and the conclusions of law thus amended, granting the lien as aforesaid.

Rehearing denied.

Shenk, J., Curtis, J., and Langdon, J., dissented.