[Civ. No. 22998.   Second Dist., Div. One.   Oct. 16, 1958.]

NATIONAL CHARITY LEAGUE, INC. (a Nonprofit Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, and Alfred Charles De Flon, Deputy County Counsel, for Appellants.

Walter H. Young for Respondent.

WHITE, P. J.—Defendants County of Los Angeles, City of Los Angeles, Los Angeles City School District, Metropolitan Water District of Southern California, and Los Angeles County Flood Control District appeal from a judgment against them and in favor of plaintiff National Charity League, Inc., a nonprofit corporation, in its action to recover taxes for the year 1955-56 paid under protest. The judgment requires the refund of the amount of taxes collected, excepting

therefrom only the portion collected for the flood control district.

According to the pretrial conference order made February 25, 1957, plaintiff and defendant at that conference stipulated that plaintiff qualifies for tax exemption under the welfare provisions of the Revenue and Taxation Code (§§ 214, 214.1); that plaintiff is the owner of the land described in the complaint; that plaintiff intended to construct on said real property a building to be used in connection with its nonprofit activity, and "if and when said building was either constructed or actually in the course of construction then said real property and the building either completed or in the course of construction would have been exempt from taxation"; that prior to the first Monday in March, 1955, "the plaintiff had cleared said real property, had dug certain trenches for foundations and had placed lumber upon said property, all of which activities were in furtherance of the construction of a building on said real property for welfare use"; that all plans and specifications had been filed with the proper officials and a building permit had been issued; that all financing had been arranged, and thereafter the building was prosecuted to completion and used for welfare purposes.

At the pretrial hearing and at the trial, plaintiff urged that the building was, on and prior to noon of the first Monday in March, 1955, "in the course of construction" and exempt from taxation under article XIII, section 1c of the California Constitution.

Defendants contended at the pretrial hearing, at the trial, and upon the instant appeal, that there was on Monday, March 7, 1955, no "building in the course of construction within the meaning of said section of said Article of the Constitution and section 214.1 of the Revenue and Taxation Code."

The pretrial order limits the evidence to be taken to construction work done on said property prior to noon on Monday, March 7, 1955, and states that "the sole legal issue is, whether what the plaintiff had done on said premises prior to noon on the first Monday in March, 1955, constituted work which could be considered to result in a building 'in the course of construction' within the meaning of the Constitutional provision and said section of the Revenue and Taxation Code above referred to."

The trial court found that, as of noon on the first Monday

in March of 1955, "excavations for the foundation . . . had been made on the said property, foundation lines had been staked, surveyed and laid out, and foundation forms had been partially constructed . . .," and concluded that "there was a building in the course of construction on the plaintiff's land, which building, when completed, was to be used exclusively for charitable purposes and not conducted for profit," and that said building and land was then exempt from taxation under section 214.1, Revenue and Taxation Code, and the California Constitution, article XIII, section 1c.

It is appellants' position that the above quoted finding and the conclusion based thereon are "wholly unsupported by any evidence whatsoever."

The record includes, in addition to the stipulation at the pretrial hearing that trenches for foundations had been dug, a photograph of the property taken on Friday, March 4, 1955, showing trenches, which, according to the testimony of John Meek, the general contractor, were dug by hand for the purposes of testing the soil and later were filled and leveled.

The witness, Jane Young, however, testified that she was on the property when the photograph of March 4th was taken; that there were two men there that day and they did more work on the property after the picture was taken; that she was also on the property at noon on Monday, March 7th; that more trenches had then been dug and there was some lumber on the lot. On cross-examination, she testified that before Monday noon the digging included "one of the corners of the new building," that more boards not shown in the picture of the 4th had been placed, and further digging had been done along those boards.

Mr. Meek testified that they had a superintendent in charge of the work on this building; that they generally use a foundation digging machine to put in foundations, and for this building "we did some machine excavation and some hand excavation"; their machine excavations were not commenced until after March 7th and no cement footings were in place before noon of that day. He testified that at noon on March 7, 1955, no part of the building was in place, and that any batter boards then located would have been removed later. However, he testified that he was not on the property on March 7th. His testimony does not preclude the court from believing the testimony of Jane Young, who was there, and inferring therefrom that some of the trenches theretofore dug and the boards

described by her as on the property at that time were excavations and forms for foundations.

From the entire record, it appears that although lumber had been stacked on the lot, the only permanent part of the building to be constructed which was on the property prior to noon of March 7th was a trench into which a portion of the foundation would later be poured.

Does such an excavation for foundation constitute a "building in the course of construction," within the meaning of the California Constitution and section 214.1 of the Revenue and Taxation Code?

Said section 1c of article XIII, as amended in 1954, includes the following language:

"In addition to such exemptions as are now provided in this Constitution, the Legislature may exempt from taxation all or any portion of property used exclusively for . . . charitable purposes and owned by . . . corporations organized and operated for . . . charitable purposes, not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

"As used in this section, 'property used exclusively for . . . charitable purposes' shall include a building and its equipment in the course of construction on or after the first Monday of March, 1954, together with the land on which it is located as may be required for the use and occupation of the building to be used exclusively for . . . charitable purposes."

Section 1c of article XIII of the California Constitution is purely permissive and not mandatory in character. Under its provisions the Legislature can refrain from exempting any of the property therein referred to, or it can exempt only such property as may meet the conditions specified therein and such further conditions as it may see fit to impose. (*Sutter Hospital* v. *City of Sacramento*, 39 Cal.2d 33, 35 [244 P.2d 390].)

In California all property must be taxed unless an exemption is authorized by the state Constitution or granted by the laws of the United States. . . .

.  .   .   .   .   .   .   .   .   .   .   .

"Section 1c is an enabling provision which empowers the Legislature to grant exemptions within certain general categories.  In acting under this section the Legislature must necessarily construe the terms of the provision in order to determine the extent of the authority conferred upon it. . . ."

(*Lundberg* v. *County of Alameda,* 46 Cal.2d 644, 648, 651 [298 P.2d 1].)

Decisions of the courts of other states, or even California decisions based upon other and different provisions of the Constitution and statutes, are of little assistance in determining the exact extent of the exemption from taxation in California on March 7, 1955. The pertinent portions of the statutes then in effect are as follows:

"Property used exclusively for . . . charitable purposes owned and operated by . . . corporations organized and operated for . . . charitable purposes is exempt from taxation. . . ." (Rev. & Tax. Code, § 214.)

". . . 'property used exclusively for . . . charitable purposes' shall include facilities in the course of construction on or after the first Monday of March, 1954, together with the land on which the facilities are located. . . ." (Rev. & Tax. Code, § 214.1.)

As stated by appellants in their opening brief, we need not be concerned with any possible difference in the meanings of the words "building" as used in the Constitution and "facilities" as used in the statute, "because a building in the conventional sense was eventually erected on the land for which exemption was claimed on tax day, 1955." The question to be determined on the instant appeal is whether that building was "in the course of construction," within the meaning of the phrases used in both the Constitution and the statute, at noon on Monday, March 7, 1955.

". . . The ordinary rule of statutory construction, in respect to provisions exempting property from general taxation, is that such provisions must be strictly construed to the end that the exemption will be neither enlarged nor extended beyond the plain meaning of the language employed." (*City & County of San Francisco* v. *County of San Mateo,* 17 Cal.2d 814, 817 [112 P.2d 595], and cases there cited.)

". . . In this regard, they [the charitable institutions], like other private owners of property, have the burden of showing that they clearly come within the terms of the exemption. . . . This rule has been expressly recognized in this state in the application of the orphanage exemption. . . .

"But the rule of strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption, for a fair and reasonable interpretation must be made of all laws, with due regard for the ordinary acceptation of the language employed and the object sought to

be accomplished thereby." (*Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, 743 [221 P.2d 31, 15 A.L.R.2d 1045].)

Therefore, on the basis of a "strict but reasonable construction" the dispute between the parties in the instant action must be determined.

■ As heretofore stated, the sole question to be so decided is whether at tax time plaintiff's building was "in the course of construction." "In the course of" is another way of saying "during," and some of the generally accepted synonyms for "construction" are: "making," "framing," "assembling," "building," "erecting,' and "creating." In other words, "the course of construction" of a building refers to that period of time between the commencement and completion of the building. In the instant action, it is agreed that at tax time plaintiff's building was not completed. The remaining question is whether, at that time, the building had been commenced.

The Supreme Court of California, in *English* v. *Olympic Auditorium, Inc.*, 217 Cal. 631, 636 [20 P.2d 946, 87 A.L.R. 1281], held that the notice of nonresponsibility was posted by the owner after the "commencement of the construction" of the auditorium. At the time of the posting, there was some lumber upon the land, a temporary platform used only for ground breaking ceremonies and then torn down had been built, and a test-hole 6 feet by 10 feet by 6 feet had been dug "for the purpose of testing the character and weight-bearing qualities of the soil, which information was necessary in preparing the plans and specifications for the building. The test-hole was thereafter used as a part of the excavation for the building." The Supreme Court in the case just cited followed *Simons Brick Co.* v. *Hetzel*, 72 Cal.App. 1 [236 P. 357], wherein it was held that a trench about 60 feet long and 4 feet deep excavated along the front of the lot "was sufficient to put the holder of the mortgage on notice of a building being under construction on the premises." Whether the building has been commenced is a question of fact to be determined by the trial court. In neither of the two decisions last above cited could it be held that, as a matter of law, the evidence of such excavations was not sufficient to support the finding that the building had been commenced.

The evidence in the instant action that at noon on tax day some trenches for the foundation of the building had been dug is not, as a matter of law, insufficient to support the

finding that the building had been commenced. A building having been commenced and not yet finished, unless abandoned, is "in the course of construction." In the instant action, it is stipulated that the plaintiff's building was completed without delay.

Appellants urge that the phrase "in the course of construction" has a different meaning when used in a statute exempting property from taxation, from the meaning of the same phrase when used in a statute creating and limiting liens of workmen as against landowners and contractors.

We are satisfied, however, that the phrase "in the course of construction" applies to a building from the time of its commencement to its completion, and see no logical reason to hold that an excavation which can be recognized by the land owner or mortgagor as "the commencement of a building" (*Simons Brick Co.* v. *Hetzel, supra,* 5) should not also be recognized by the tax assessor as the commencement of a building.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 10, 1958. Carter, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.