In re SHOWPLACE SQUARE LOFT COMPANY, LLC, Debtor.

Showplace Square Loft Company, LLC, Plaintiff,

v.

Primecore Mortgage Trust, Inc., Primecore Funding Group, Inc.; Primecore Properties, Inc.; ULF Ingmar Kauffeldt; Gerard Simonowicz; David Innes Walker; William Craig Walker; BBJ Electric, Inc.; Killarney Construction Company, Inc.; Ronan Patrick Manning; Donald Raymond Freas; and ICF Enterprises, Inc., Defendants.

Bankruptcy No. 02–31298DM.
Adversary No. 02–3157DM.

United States Bankruptcy Court, N.D. California.

Feb. 6, 2003.

Michael C. Johnson, Law Offices of Michael C. Johnson, San Mateo, CA, Russell D. Pollock, Greene, Radovsky, MAloney and Share, Mark J. Romeo, Matthew J. Shier, Pinnacle Law Group, San Francisco, CA, Deborah E.G. Wilder, Belmont, CA, for creditor.

Cathleen Cooper Moran, Moran Law Group, Inc., Mountain View, CA, for debtor.

## MEMORANDUM DECISION ON MECHANIC'S LIEN CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

DENNIS MONTALI, Bankruptcy Judge.

On January 24, 2003, this court held a hearing on the motion for summary judgment ("MSJ") filed by Defendant Killarney Construction Company, Inc. ("Killarney"). Defendant Primecore Mortgage Trust, Inc. ("Primecore") filed an opposition to the MSJ. For the reasons stated below, the court will grant summary judgment in part and deny summary judgment in part.[1]

### I. *Relevant Undisputed Facts*

Killarney was the general contractor for the construction of live-work lofts for Showplace Square Loft Company, LLC ("Debtor"). Primecore was the initial lender for the project and recorded its deed of trust on March 16, 2000.

As of February 29, 2000, trenches had been dug at the construction site and stakes indicated the outline of the building to be constructed there.[2] In addition, on

---

1. The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052(a).

2. Primecore does not dispute that this work was done before March 16, 2000. In fact, Primecore's own witness, Frank Torrente, took photographs of the site on March 13, 2000, which showed the existence of the trenches. As admitted by Primecore on page 5 of its memorandum of points and authorities in opposition to the MSJ, the "photographs evidenced the work at the site that constituted soil compaction." At his deposition, Mr. Torrente testified that on March 13,

February 29, 2000, the site superintendent (Garrett O'Donoghue) was present when Construction Testing Services performed field inspections, tested the soil, bore holes and took soil samples. Between March 9 and March 14, 2000, the site superintendent oversaw soil compaction work at the construction site.

Even though Killarney issued a stop work notice to all subcontractors and suppliers on May 4, 2001, work was performed between May 4, 2001, and July 5, 2001 (when Killarney was paid in full for its work through that date). In particular, one of Killarney's subcontractors—Anvil Iron Works ("Anvil")—installed ground floor exterior guard rails and interior handrails between May 9, 2001, and May 18, 2001.

Debtor recorded a Notice of Completion on December 20, 2001; the Notice indicated that work was completed on November 8, 2001. On February 26, 2002, Killarney recorded its mechanic's lien in the amount of $488,347.60 plus interest. Killarney filed an amended mechanic's lien on February 27, 2002, to correct the zip code of Debtor.

The City and County of San Francisco issued a Certificate of Final Completion and Occupancy for the project on November 8, 2001. The certificate stated: "To the best of our knowledge, the construction described above has been completed and, effective as of the date the building permit application was filed, conforms both to the Ordinance of the City and County of San Francisco and to the Laws of the State of California." In addition, Killarney sent memoranda dated November 13 and November 14 to certain subcontractors noting that it "will be off" the site or job on November 16, 2001.

On December 18, 2001, Killarney faxed to its primary subcontractors a punch list of items which needed to be completed. While many of these tasks were de minimus (i.e., clean kitchen counter, clean lower bath mirror and glass shelves, etc.), the punch list also directed subcontractors to,

---

2000, he saw "evidence of construction going on" at the site. In particular, he saw people working on the site, equipment being operated on the site, and trenches on the site.

Instead of disputing that the trenches had been dug and the soil compaction had been performed prior to March 16, Primecore attempts to argue (1) that construction had not "commenced" because certain computer software showed the start date as March 20, 2000, (2) that certain other tasks (such as storage of lumber and paint and the installation of casing) were performed on other phases of the project; and (3) that any work performed prior to that date was not performed pursuant to Killarney's prime contract with Debtor. The first two contentions are irrelevant (for the reasons discussed later); assuming that Primecore's contentions are true, they do not change or alter the material fact that soil-testing, soil-compacting and trench-digging occurred prior to March 16, 2000. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (existence of immaterial factual dispute will not defeat otherwise proper motion for summary judgment). The third contention is not supported by any specific facts or evidence, but is merely an insupportable inference drawn from certain ambiguous deposition testimony of Paraig O'Donoghue ("Paraig"). *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 96 (9th Cir.1983) (party opposing summary judgment "cannot rely on the mere possibility of a factual dispute as to intent to avert summary judgment. Nor can it expect the district court to draw inferences favorable to it when they are wholly unsupported."). In any event, the financial schedule appended to the prime contract specifically contemplates that Killarney will be responsible for "site work" including excavation, trenching, and backfilling. Paraig's deposition testimony further indicates that all of this work "was under the scope of Killarney's prime contract with the owner with respect to preparing the site for full-on construction."

*inter alia,* paint doors, caulk glass into place, finish window frames, adjust drains, and paint other specific spots. Killarney, however, has not introduced evidence that these tasks were actually completed, and has not established the dates such tasks were done and the time required to complete such tasks.

## II. *Procedural History*

On November 1, 2002, this court held a status conference in the above-captioned adversary proceeding. At that time, counsel for Killarney announced that she would shortly be filing the MSJ. The court and the parties discussed possible hearing dates and the need to take discovery prior to the hearing. The court tentatively scheduled the hearing for December 27, 2002, and counsel for Primecore indicated that he would file a Rule 56(f) declaration if the hearing were held so quickly. Counsel for Primecore requested that the hearing be held on January 17, 2002.

The parties agreed to work out an arrangement for rescheduling the hearing and for conducting discovery. On December 27, 2002, Killarney filed its MSJ and set it for hearing on January 24, 2002.[3]

## III. *Discussion*

### A. **Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(c) ("Rule 56") (incorporated by Federal Rule of Bankruptcy Procedure 7056 ("Bankruptcy Rule 7056")), provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

"The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie),* 211 B.R. 367, 373 (9th Cir. BAP 1997), *aff'd,* 163 F.3d 609 (9th Cir.1998), (quoting *Grzybowski v. Aquaslide 'N' Dive Corp (In re Aquaslide 'N' Dive Corp.),* 85 B.R. 545, 547 (9th Cir. BAP 1987)). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.1986), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986). Significantly, the "burden carried by a summary judgment movant to show lack of factual dispute should not include demonstrably irrelevant or inapposite factual issues." *California First Bank v. Griffin (In re Orosco),* 93 B.R. 203, 208 (9th Cir. BAP 1988).

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**3.** In his declaration in opposition to the MSJ, counsel for Primecore indicates that he had reached an agreement with Killarney's counsel to limit discovery to issues pertaining to priority of Killarney's lien. Killarney's counsel disputes this. References in memoranda and declarations to a need for further discovery do not qualify as motions required by Federal Rule of Civil Procedure 56(f). *Brae Transportation, Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986). Nonetheless, the court is denying summary judgment as to the issue on which Primecore is requesting further discovery, so even if the request had been in proper form, it is moot. With respect to the priority issue, the matter is determinable on the papers presented, so further discovery would be futile. *Mullis v. U.S. Bankruptcy Court,* 828 F.2d 1385, 1387 n. 6 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988).

Nonetheless, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assn.*, 809 F.2d 626, 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505). "The nonmoving party must do more than show there is some metaphysical doubt as to a material fact." *Kowalski–Schmidt v. Forsch (In re Giordano)*, 212 B.R. 617, 621 (9th Cir. BAP 1997). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *T.W. Electrical Service*, 809 F.2d at 630.

### B. General Principles of California Mechanic's Lien Law

■ A general contractor is entitled to a lien on a construction project as security for payment of the labor and materials furnished to the project. Cal. Civ.Code § 3110. The mechanic's lien is entitled to "off-record priority;" in other words, it has priority over any lien, mortgage or deed of trust recorded subsequent to commencement of work, even when the mechanic's lien claim is recorded after the other lien, mortgage or deed of trust. Cal. Civ.Code § 3134.

■ A general (or original) contractor, in order to enforce a lien, "must record his claim of lien after he completes his contract and before the expiration of (a) 90 days after the completion of the work of improvement ... if no notice of completion or notice of cessation has been recorded, or (b) 60 days after recordation of a notice of completion or notice of cessation." Cal. Civ.Code § 3115. In addition, when work ceases completely on an uncompleted project for sixty days but resumes thereafter, "a new date for priorities also begins with the commencement of the new work." Miller & Starr, *California Real Estate* 3d ed., § 11:127 (2000) ("*Miller & Starr*"); Cal. Civ.Code § 3086. In other words, the "off-record" priority of the mechanic's lien will relate back only to the re-commencement of work.

### C. Application of Law to Undisputed Facts

1. *Work Commenced Prior to March 16, 2000*

A mechanic's lien acquires off-record priority upon "commencement of the work of improvement." Cal. Civ.Code § 3134. "'Work of improvement' includes but is not restricted to the construction, alteration, addition to, or repair, in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, or road, the seeding, sodding, or planting of any lot or tract of land for landscaping purposes, *the filling, leveling, or grading of any lot or tract of land*, the demolition of buildings and the removal of buildings." Cal. Civ.Code § 3106 (emphasis added).

■ "For purposes of establishing the priority of mechanics' lien claimants who perform work or supply materials for the construction of an improvement, the work is not considered as having 'commenced' until there is some physical work on the property that is apparent and visible, and the work must be of a permanent nature." *Miller & Starr* § 11:125 (citing various California cases); *see also Simons Brick Co. v. Hetzel*, 72 Cal.App. 1, 236 P. 357 (1925) (construing "commencement of work" under predecessor to California Civil Code section 3134).

In *Simons*, the holder of an unrecorded mortgage testified that, when he went upon the premises for the purpose of ascertaining if any construction was being

done, there were no tools or materials of any description on the premises nor any evidence of a building being erected. Nonetheless, other evidence demonstrated that a trench about sixty feet long and four feet deep had been excavated along the front of the lot. The court held that this trench constituted "commencement of work" sufficient to put the mortgage holder on notice of construction. *Simons*, 236 P. at 358. Similarly, the California Supreme Court held in *English v. Olympic Auditorium, Inc.*, 217 Cal. 631, 20 P.2d 946 (1933), that construction commenced where there was some lumber on the ground and a test hole had been dug. *English*, 20 P.2d at 949. In *National Charity League, Inc. v. County of Los Angeles*, 164 Cal.App.2d 241, 330 P.2d 666, 667 and 670 (1958), the court concluded that construction had commenced (for tax assessment purposes) when "the plaintiff had cleared said real property, had dug certain trenches for foundations and had placed lumber upon said property."

■ Here, Primecore's own witness took pictures prior to March 16, 2000, showing that trenches had been built on the property, stakes had been placed, and that construction equipment was present. Primecore's own witness testified that he saw "evidence of construction going on" at the site prior to March 16. In particular, he saw people working on the site, equipment being operated on the site, and trenches on the site. Furthermore, Primecore has not refuted that soil com-

paction occurred prior to March 16, 2000. The foregoing work is undisputed. Under *Simons* and *English*, because the effects of this work are apparent and visible and of a permanent nature, construction commenced for the purposes of California Civil Code section 3134. Primecore has not introduced evidence that this work did not occur, so summary judgment in favor of Killarney is appropriate as to this issue.[4]

### 2. Work Did Not Cease In April 2001

■ Primecore contends that Killarney lost any off-record priority over Primecore's recorded lien because of a "cessation of labor ... for a continuous period of 60 days." Cal. Civ.Code § 3086(c). In particular, Primecore contends that labor ceased from May 4, 2001, through July 6, 2001. Killarney, however, introduced undisputed evidence that Anvil was on the site installing ground floor exterior guard rails and interior handrails between May 9, 2001, and May 18, 2001. Therefore, labor did not cease completely and continuously for a sixty-day period. *W.F. Hayward Co. v. Transamerica Ins. Co.*, 16 Cal.App.4th 1101, 20 Cal.Rptr.2d 468, 473 (1993) ("cessation" is a "complete work stoppage" and means "work by all trades has ceased on the project"). Because Primecore has not introduced evidence to dispute that Anvil did this work from May 9 through May 18, Killarney is entitled to summary judgment because no dispute of material fact exists with respect to this issue.[5]

---

4. As discussed in footnote 2, Primecore has raised extraneous and irrelevant purported factual disputes in an effort to prevent summary judgment that construction commenced prior to March 16, 2001. These arguments are either irrelevant or not supported by facts or evidence.

5. Primecore argues that the work performed by Anvil was tardy and that Killarney had issued a stop work notice for the relevant

time period. Neither of these arguments refutes the simple and relevant fact that Anvil did do original installation work from May 9 through May 18, 2001. Primecore cannot defeat summary judgment by manufacturing irrelevant factual disputes. *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505 (existence of immaterial factual dispute will not defeat otherwise proper motion for summary judgment).

3. *Whether Killarney Timely Recorded Its Lien Is a Question of Material Fact Precluding Summary Judgment*

■ Debtor recorded a Notice of Completion on December 20, 2001; the Notice indicated that work was completed on November 8, 2001. Debtor therefore did not record its notice of completion within ten days of the purported date of completion as required by California Civil Code section 3093(e), which provides that the "the notice of completion shall be recorded in the office of the county recorder of the county in which the site is located, within 10 days after such completion." Consequently, the notice of completion was invalid. *Fontana Paving, Inc. v. Hedley Bros., Inc.*, 38 Cal.App.4th 146, 45 Cal.Rptr.2d 295, 300–01 (1995) (where notice of completion was not recorded within ten-day statutory period, it was invalid and had no effect on the time for recording mechanic's lien).

Killarney recorded its mechanic's lien on February 26, 2002. If the Notice of Completion had been valid, Killarney would have been required to record its lien within 60 days of December 20, 2001 (or no later than February 18, 2002). Cal. Civ. Code § 3115. Because the Notice of Completion was untimely and invalid, however, Killarney had 90 days after the completion of the work of improvement in which to record its lien. *Id.; Fontana Paving, Inc.*, 45 Cal.Rptr.2d at 300–01 ("When the owner records a notice of completion outside the statutory 10–day period, it is invalid.... Because the notice of completion was not filed within the 10–day period specified in section 3093, it has no legal effect on the statutory lien-filing period."). *See also* Bronstein, *Trivial (?) Imperfections: The California Mechanics' Lien Recording Statutes*, 27 *Loyola of Los Angeles Law Review* 735, 748 (Jan.1994) ("In the case of an invalid notice of completion, the claimant's lien recording is controlled by the ninety-day period of limitations defined by sections 3155(a) or 3116(a) and not the shorter period defined by sections 3115(b) or 3116(b).").

Killarney requests that this court enter summary judgment that it filed its lien within 90 days of completion. The court cannot do so, because a material fact dispute as to the date of completion. Primecore contends that completion occurred on November 8, 2001 (as set forth in the Notice of Completion) or November 16, 2001 (the date that Killarney should have been off the site according to notices it provided to subcontractors) while Killarney contends that work was not completed until mid-January 2002.

■ Although section 3115 does not define "completion" as "substantial completion," cases interpreting California's mechanic's lien laws have held that "substantial completion" triggers the 90–day time period. *Mott v. Wright*, 43 Cal.App. 21, 184 P. 517, 520 (1919); *Hammond Lumber Co. v. Yeager*, 185 Cal. 355, 197 P. 111, 112 (1921). Correction of "trivial imperfections" will not extend the time for filing a mechanic's lien. *Grettenberg v. Collman*, 119 Cal.App. 7, 5 P.2d 944, 946 (1931) ("Repairs of slight value or importance have been held not to interfere with findings to the effect that the buildings or improvements were previously completed.").

■ Here, a material factual issue exists as to whether the project was substantially completed more than 90 days before February 26, 2002. Primecore has produced sufficient evidence (the Notice of Comple-

tion, the City of San Francisco's Certificate of Final Completion and Occupancy filed on November 8, 2002, and Killarney's memorandum to subcontractors regarding the date it intended to vacate the premises (November 16)) to put this matter at issue.

In addition, without knowing what was involved to complete the tasks contained on the punch-list, this court cannot conclude as a matter of undisputed fact that such tasks were not trivial. Accordingly, summary judgment is denied as to this issue.

### D. Primecore's Informal Rule 56(f) Request

For the reasons set forth in footnote 3, the court is denying Primecore's informal Rule 56(f) request for further discovery. Nonetheless, to the extent that the question of whether Killarney timely filed its lien is still unresolved, discovery may proceed on that issue.

### IV. *Disposition*

Counsel for Killarney should submit an order consistent with this memorandum decision. In doing so, counsel should comply with B.L.R. 9021–1 and B.L.R. 9022–1. The court will hold a further status conference in this matter on February 28, 2003 at 1:30 p.m.